534 A.2d 1389

**Thomas C. CARDYN, Appellee,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HEPPENSTALL and Penna. Mfr. Assn. Inc.)**

**Appeal of HEPPENSTALL COMPANY.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1987.

Decided Dec. 31, 1987.

Roy F. Walters, Jr., Michael D. Sherman, Fried, Kane, Walters & Zuschlag, Pittsburgh, for appellant.

Thomas P. Geer, Pittsburgh, for Thomas C. Cardyn.

Thomas J. Magrann, Secretary, Workmen's Compensation Appeal Board, Harrisburg.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal from the Commonwealth Court's reinstatement of a referee's decision awarding workmen's compensation benefits to appellee, Thomas C. Cardyn. This award had been reversed by the Workmen's Compensation

Appeal Board on the ground that appellee had not met his burden of proof in establishing a causal connection between a work-related injury and the disability.

The germane facts of this case are as follows. Appellee was employed as an apprentice machinist by Heppenstall Company, a Pittsburgh based steel manufacturer. On March 15, 1974, while attempting to loosen a tightly fastened machine bolt, appellee lost his footing, fell on the machine's steel platform and struck his right knee. Appellee was taken to a local hospital for x-rays and released that same day. After the intervening weekend appellee attempted to resume work, but was forced to abandon the job because of pain to his knee. The following day appellee was seen by a physician and given a cortisone injection to relieve the pain. At the time of this treatment the diagnosis was arthritis.

Approximately four months later, on July 26, 1974, appellee underwent a surgical procedure commonly known as a "total knee." With this procedure the knee joint is totally removed and replaced with an artificial prosthesis. Unfortunately, appellee's leg became infected as a result of the surgery, which caused more problems for appellee. Ultimately, the knee joint was fused which severely limited appellee's ability and rendered him totally disabled.

On May 27, 1975, appellee filed a claim for workmen's compensation benefits. Hearings were conducted between 1976 and 1979, during which appellee offered medical testimony purporting to show the extent of his disability and the cause.

The referee accepted this evidence as sufficient and awarded benefits. However, the Board reversed the referee on the basis that appellee's evidence did not unequivocally establish a causal connection between the fall at work and the resultant disability. On appeal the Commonwealth Court reversed the Board and reinstated the referee's award.[1] Upon petition we granted allowance of appeal.

1. *Cardyn v. Workmen's Compensation Appeal Board,* 95 Pa.Cmwlth. 382, 505 A.2d 1065 (1986).

This case concerns a claimant's burden of proof in proving causation between a work-related injury and a disability. There are in reality two issues presented. The first is whether the disability suffered by appellee is of a kind which requires expert medical evidence to prove causation. The second is whether the evidence presented by appellee was unequivocal as to the issue of causation.

The general principles of law in this area of workmen's compensation are well settled. At the outset, in a workmen's compensation case the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). This includes establishing a causal relationship between a work-related incident and an alleged disability. *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A.2d 445 (1957); *Monahan v. Seeds & Durham*, 336 Pa. 67, 6 A.2d 889 (1939).

The Commonwealth Court in this case held that appellee's injury was such that the causal connection was obvious. Thus they held that under *Morgan v. Giant Markets*, 483 Pa. 421, 397 A.2d 415 (1979), medical evidence of causation was not necessary.

In *Morgan*, this Court held that "[w]here one is doing an act that requires force or strain and pain is experienced at the point of force or strain, the injury may be found to have been established." *Id.*, 483 Pa. at 424, 397 A.2d at 416. The facts in *Morgan* were that the claimant experienced severe back pain while unloading a truck. The issue was whether the claimant's description of pain was enough to establish an "injury." Significantly, the Court was not faced with the question of whether that injury was disabling. This distinction is critical to an understanding of the proper application of *Morgan*. For instance, in the context of this case appellee fell at work and struck his knee. At that time he experienced pain, and he was injured. The question, however, is not merely whether claimant was injured, but whether that injury caused him to be disabled; and where the causal connection between the injury and the

disability is not obvious, more is required than a claimant's subjective testimony.

There is a difference between an injury and its consequences, and tracing those consequences is often beyond the skill and experience of laymen since the answers can lay in complicated etiologies known only to experts. For example, if a man falls at work and cuts his arm he will not normally need medical testimony to prove that he was *injured* at work. But if a man claims that the injury to his arm rendered his hand worthless then medical testimony will generally be required to support such a claim since the relationship of the arm muscles to the function of the hand is not a subject about which lay witnesses can normally testify with expertise. To obviate the need for expert diagnosis regarding the consequence of an injury would be to make every man his own physician, a privilege that wise men do not exercise. Certainly no system can support the cost of what many men suppose or believe is a consequence of their injury. Neither should those suffering consequences be deprived upon inexpert lay beliefs.

In the present case Mr. Cardyn's claim went far beyond a mere claim that he was injured at work. He claimed that the injury was of such a degree that it required the surgery which ultimately led to his fused knee, thereby constituting a disability. The connection between Mr. Cardyn's injury and his ultimate claim was certainly not obvious, especially in light of the extensive medical history concerning the subject knee. That medical history is summarized below.

Approximately fifteen years prior to his fall appellee first experienced problems with his knees. In 1958, Herbert R. Tauberg, M.D., an orthopedic surgeon, began treating appellee for an injury he sustained to his right knee.[2] Over the years it was not uncommon for appellee to complain of pain in his knees. The pain reached such a degree that in September, 1970 Dr. Tauberg performed a patellectomy to

2. Dr. Tauberg testified on behalf of appellee. In lieu of live medical testimony appellee had the deposition of Dr. Tauberg admitted into evidence.

remove appellee's right knee cap. At the time of this particular surgical procedure there was evidence of a moderate amount of deterioration in the knee attendant to the natural degenerative aging process.

Beginning in 1971, and up through 1973, Dr. Tauberg saw appellee anywhere from two to six times per year to administer cortisone treatments and anti-inflammatory medications to relieve some of the pain and inflammation due to the arthritic change that was present in the knee joint. It was during this period, in 1972, that Dr. Tauberg first recommended that appellee consent to the total knee replacement surgery for his right knee. Appellee resisted and continued to work. Again in 1973, appellee returned to Dr. Tauberg with further problems with the right knee and again the surgery was rejected by appellee. The next time Dr. Tauberg saw appellee was following the work-related incident of March 15, 1974, at which time appellee was told that there was little else that could be done for him outside of the knee operation. The surgery was finally performed on July 26, 1974.

█ The facts here are undisputed that the surgery which Mr. Cardyn had after the work-related injury was that which had already been prescribed for him prior to the injury. This is not to say that Mr. Cardyn's fall could not have caused the need for the surgery, only that the cause was not obvious. Thus this case is not similar to *Morgan, supra,* and the Commonwealth Court's reliance on that case was misplaced. Therefore, in order for appellee to have sustained his burden of proof he was required to introduce competent medical evidence on the issue of causation.

Turning our attention now to the second issue, we must decide whether as a matter of law appellee's medical evidence was competent to support his claim.[3] In our decision in *Lewis v. Workmen's Compensation Appeal Board,* 508

---

3. In *Lewis v. Workmen's Compensation Appeal Board,* 508 Pa. 360, 498 A.2d 800 (1985) we held, *inter alia,* that "[a] determination that certain medical testimony is equivocal is not ... a finding of fact; rather, it is a conclusion of law and as such fully reviewable." *Id.,* 508 Pa. at 366, 498 A.2d at 803. Thus we are not here reviewing a referee's credibility determination.

Pa. 360, 498 A.2d 800 (1985), we summarized the standards of competency for medical evidence:

Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954). Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship. *Bisesi v. Workmen's Compensation Appeal Board*, 61 Pa.Cmwlth. 260, 433 A.2d 592 (1981).

*Id.*, 508 Pa. at 365–366, 498 A.2d at 802. Furthermore, we explicitly stated that "[s]tatements that an assigned cause 'could have' been the cause of the condition have repeatedly been held to be legally insufficient." *Id.*, 508 Pa. at 367, 498 A.2d at 803 (citations omitted).

At his deposition Dr. Tauberg, claimant's expert, was asked by claimant's counsel to describe the relationship between the surgery and the injury. Dr. Tauberg answered:

A. I can't say that the injury itself made him have the surgery because we recommended the surgery before this. The only thing I can say is it could have speeded him up to come into the hospital to have treatment.

Q. Is that a reasonable analysis of the effects of the injury on the relationship between the injury and the surgery?

A. That can be reasonable, yes.

. . . . .

Q. . . . [i]s that correct, there could be the relationship of the injury to the fall to the surgery?

A. Yes.

On cross-examination Dr. Tauberg testified that he still held the same opinion as that contained in a November 18, 1976 report he authored concluding that "[i]t is very diffi-

cult to state that the accident of March 15, 1974 triggered his present disability because the patient had for the past several years complained of pain in both knees." Further cross-examination followed:

Q. You went on to say, "It is possible that the injury may have aggravated his present condition."

A. May have aggravated.

Q. In your testimony, you said it may have brought on the operation a little sooner.

A. Made him more symptomatic and decided to have something done.

Q. But you had recommended this particular operation a few years before, hadn't you?

A. I certainly did.

Q. He was at that point where he needed it?

A. Yes, sir.

On redirect examination claimant's counsel again asked Dr. Tauberg to comment on the relationship between the fall and the subsequent surgery, to which he replied: "I really didn't relate that the fall was making him come to surgery. You are asking me is it possible. I say, yes, it could be."

■ The testimony is almost identical to that which we rejected in *Lewis*. In both instances the claimant's doctor was unable to testify with any certainty that the work-related incident caused the asserted disability. In both instances the doctor was only able to render an opinion that the incident "could have" caused the resultant problems; and, as we have seen, such evidence is not unequivocal, and as such it is not competent medical evidence of causation. *Lewis, id.* Therefore we are constrained to reverse the order of the Commonwealth Court.

The order of the Commonwealth Court is reversed and the decision of the Workmen's Compensation Appeal Board is reinstated.

HUTCHINSON, Former J., did not participate in the consideration or decision of this case.