611 A.2d 327

**William J. RUHL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (MAC–IT PARTS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Jan. 24, 1992.

Decided June 1, 1992.

Petition for Allowance of Appeal
Denied Jan. 13, 1993.

Robert A. Sloan, for petitioner.

Gabriel B. Frank, Jr., for respondent.

Before DOYLE, and FRIEDMAN, JJ., and BARRY, Senior Judge.

FRIEDMAN, Judge.

William J. Ruhl appeals from an order of the Workmen's Compensation Appeal Board (WCAB) affirming the referee's denial of benefits under Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1). We affirm.

Ruhl was employed by Mac–It Parts, Inc. (Mac–It) as a screw machine operator. He operated the machine while sitting on a stool placed atop a three-foot square platform that was raised approximately twelve inches above the ground. Ruhl testified that on February 29, 1984, he felt a twinge in his right knee as he stepped up onto the platform to work. He then sat down on his stool, crossed his legs and immediately experienced sharp pain in his right knee.

At that time, Ruhl assumed that the pain was merely a result of his preexisting arthritic condition, which had been the source of problems for him in the past. Thus, believing that the pain would eventually disappear on its own, Ruhl continued to work. However, when the pain persisted, Ruhl sought medical attention.

A medical examination by Robert Mathews, M.D., revealed that as a result of the leg-crossing incident at work, Ruhl suffered a torn medial meniscus in his right knee, which Dr. Mathews surgically repaired on March 22, 1984. Ruhl returned to work after three days, although he continued to suffer from right knee problems. On October 2, 1984, Ruhl left work again in anticipation of total knee replacement

surgery, which Wayne Conrad, M.D., performed one week later. He has not returned to work since that time.

Following the knee replacement, Ruhl underwent four more surgeries on the knee. On February 8, 1985, Ruhl had an operation to repair the kneecap which split when he fell on some ice. Shortly thereafter, on March 27, 1985, the kneecap refractured and had to be surgically removed. After this operation, Ruhl contracted a staph infection of the area, which was cleaned out in a July 1985 procedure. Finally, on November 19, 1986, all components of Ruhl's artificial knee were removed and he was placed in a long leg brace.

In June 1986, Ruhl filed a claim petition alleging that he was disabled as a result of the February 29, 1984 incident.[1] Following a series of hearings at which both parties presented lay and medical testimony, the referee denied Ruhl's petition. The referee concluded that Ruhl failed to sustain his burden of proving a work-related injury on February 29, 1984 and further, that he failed to prove that his disability, his subsequent surgeries and his present problems were work-related. The WCAB affirmed the denial of benefits and Ruhl appeals.

■ In a workmen's compensation case, the claimant has the burden of establishing all the elements necessary to support an award. *Halaski v. Hilton Hotel,* 487 Pa. 313, 409 A.2d 367 (1979). To sustain an award under the act, Ruhl must prove that he suffered a work-related injury and that this injury resulted in his disability.[2]

1. While the incident took place on February 29, 1984, Ruhl continued to work at Mac–It until October 2, 1984, losing only three days for repair of his torn meniscus. Therefore, Ruhl only claims benefits commencing on the latter date.

2. Ruhl argues that he does not bear the burden of proving a causal link between the disability and the work injury. Rather, he claims that the burden is on the employer, in the nature of an affirmative defense, to demonstrate that the disability is, in fact, attributable to a cause other than the work injury. Ruhl mistakenly relies on *York City School District v. Workmen's Compensation Appeal Board (Peyser),* 136 Pa.Commonwealth Ct. 110, 582 A.2d 423 (1990) to support this contention. However, in *York City* we discussed the allocation of burden of proof where claimant filed a reinstatement petition following a suspension of his benefits; clearly, this is not the situation we face here. The burden remains on Ruhl, as claimant, to prove the existence of a causal

Thus, on appeal, Ruhl raises two arguments. First, he contends that the referee and WCAB erred in concluding that the February 29, 1984 incident did not constitute a work-related injury within the meaning of the act. Second, Ruhl argues that the referee and WCAB erred in concluding that he failed to prove a causal relationship between the injury and his disability.

Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed and whether all necessary factual findings are supported by substantial evidence. *King v. Workmen's Compensation Appeal Board (Wendell H. Stone Co.)*, 132 Pa.Commonwealth Ct. 292, 572 A.2d 845 (1990).

In reviewing the record, we must also be mindful of the referee's role as ultimate factfinder. It is solely within the province of the referee to make determinations of credibility, and in doing so he may accept or reject any witnesses' testimony in whole or in part, including that of medical witnesses. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa.Commonwealth Ct. 164, 578 A.2d 83 (1990). If findings from testimony accepted by the referee are supported by substantial evidence, then we must accept the findings as conclusive. *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State Hospital)*, 131 Pa.Commonwealth Ct. 24, 569 A.2d 395 (1990). Substantial evidence must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Workmen's Compensation Appeal Board v. Auto Express, Inc.*, 21 Pa.Commonwealth Ct. 559, 346 A.2d 829 (1975). In addressing Ruhl's allegations of error, we must remain cognizant of these limitations.

■ We agree that Ruhl's injury was work-related. There is no dispute that Ruhl suffered a tear of the medial meniscus of his right knee while seated at his work station on February 29, 1984. In addition to Ruhl's own testimony, this history of the incident was confirmed by Ruhl's supervisor and medical

relationship between the work-related incident and the alleged disability.

experts, Dr. Mathews and Dr. Conrad, and was found credible by the referee. (Referee's Finding of Fact No. 8). Significantly, the testimony of Mac–It's medical expert, Dr. Ellis Friedman, also explicitly acknowledged that this incident was the cause of Ruhl's initial injury. Referring to Dr. Mathews' history of the incident, Dr. Friedman testified:

A Dr. Mathews had determined precisely what had happened to the patient. Very obviously, the patient was sitting, crossed his knee and had immediate pain in the knee.

Q Doctor, do you find that this is the basis for Mr. Ruhl's torn meniscus?

A Absolutely. It is the perfect way to tear it, and it is something that happens so frequently it may be considered by some to be the most common cause of tearing a meniscus, simply crossing the leg and then uncrossing it. As you go from the flexed or crossed position to the extended or straightened position the back part of the meniscus is caught between the femur and the tibia, and it splits or tears.

(R.R. 127).

Although Dr. Friedman clearly agreed that the leg-crossing incident caused the torn meniscus, the referee nevertheless found credible Dr. Friedman's opinion that the incident wherein Ruhl crossed his legs was not work-related. (Referee's Finding of Fact No. 9). Based upon Dr. Friedman's opinion, the referee concluded that Ruhl did not sustain his burden of proving an injury on February 29, 1984 consistent with the act. (Referee's Finding of Fact No. 10; Referee's Conclusion of Law No. 2).

The referee grounds these findings on the following testimony of Dr. Friedman:

Q Dr. Friedman, do you have an opinion as to reasonable medical certainty whether the torn meniscus was related to Mr. Ruhl's work?

A I do.

Q And what is that?

A  It was not.

Q  And the basis for that?

A  The nature of the injury written by Dr. Mathews in his initial report is the kind of injury that I have seen many, many times in my own practice.  A patient sits with the leg crossed, goes to extend it and feels a sudden pop or tear or sharp pain and develops fluid within the knee within a short period of time and limps.  Examination shows internal derangement and an arthroscopy shows a nice flat tear or longitudinal tear involving the medial meniscus.  It is the classic history for that kind of tear.

(R.R. 133–134).

. . . .

Sitting and crossing the leg is not an injury purely associated with work.  It can occur at any time and is simply an activity of daily living.  When this patient crossed his leg, he tore his medial meniscus.  There is ample indication . . . that the patient had not had any type of injury to his knee involving a blow to the knee, a fall, etc.

(Report attached to deposition, R.R. 144).

The act does not require that an injury be "purely associated with work" rather than a simple "activity of daily living," or that it stem from a fall or a blow in order to be considered work-related.  Therefore, the referee erred by accepting Dr. Friedman's opinion as the basis for finding No. 9.  Based on unambiguous and uncontroverted evidence in the record, we determine that Ruhl sustained a work-related injury on February 29, 1984.  The referee could not find otherwise.

Ruhl next argues that the referee erred in determining that Ruhl's subsequent surgeries and present problems were not work-related.  We disagree with Ruhl.

There is a difference between an injury and its consequences which our Supreme Court explained in *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987).  In *Cardyn*, the Court held that claimant must not only establish an injury;  he must also prove that the injury caused him to be disabled.  Moreover, where

the causal connection between the injury and the disability is not obvious, *Cardyn* requires claimant to introduce unequivocal medical evidence to sustain his burden of proof on the issue. *See also Duquesne Light Co. v. Bundy*, 53 Pa.Commonwealth Ct. 60, 409 A.2d 975 (1980). As the Court stated in *Cardyn:*

> In the present case Mr. Cardyn's claim went far beyond a mere claim that he was injured at work. He claimed that the injury was of such a degree that it required the surgery which ultimately led to his fused knee, thereby constituting a disability. The connection between Mr. Cardyn's injury and his ultimate claim was certainly not obvious, especially in light of the extensive medical history concerning the subject knee....

*Id.,* 517 Pa. at 102, 534 A.2d at 1391.

■ Where Ruhl's medical history includes evidence of pre-existing degenerative arthritis, the connection between his injury and his disability is not obvious. Therefore, under *Cardyn,* Ruhl must prove the connection between the injury and the alleged disability by unequivocal medical evidence. This he has failed to do.

■ The referee found the testimony of Dr. Mathews and Dr. Conrad to be inconclusive regarding causation,[3] clearly

---

3. The referee found:
   4. The Claimant was treated by Dr. Wayne Conrad from May of 1984 to the present. The Claimant has offered the deposition testimony of Dr. Conrad concerning the Claimant's history, treatment, and prognosis and Dr. Conrad in his testimony could not relate the Claimant's present condition including the basis for the total knee replacement to any work related injury. This Referee finds that Dr. Conrad expressly made no opinion with regard to the basis for the Claimant's continuing problems including the total knee replacement.
   ....
   6. Based on all of the evidence of record, both lay and medical, this Referee finds as a fact that Dr. Mathews' testimony is not conclusive regarding the Claimant's present condition and the basis for the total knee replacement. This Referee finds as a fact that the present condition of the Claimant and the basis for the total knee replacement was the Claimant's pre-existing arthritis, his subsequent slip and fall and his subsequent surgeries by Dr. Conrad.
   7. Based on all of the evidence of record, both lay and medical, the Referee finds as a fact that based on the testimony of Dr. Conrad,

preferring and accepting Dr. Friedman's testimony which denied any causal relationship between the February 29, 1984 incident and Ruhl's subsequent knee replacement and present disability. Instead, Dr. Friedman states unequivocally that the sole cause of Ruhl's disability was his pre-existing arthritic condition.[4] Dr. Friedman testified as follows:

> The injury itself was the crossing of the leg and then uncrossing it. The surgery was for that problem which had caused the torn medial meniscus. The subsequent surgery for the total knee replacement was not related either to the surgery or the post-op rehabilitation or lack of it. It was related to the fact that the patient had other problems which were becoming increasingly more symptomatic regardless of whether or not the patient had had the torn cartilage.

(R.R. 139).

The question of whether medical testimony is equivocal must be made on the medical testimony as a whole; there are no "magic words" which the doctor need recite to establish causation. *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch)*, 97 Pa.Commonwealth Ct. 346, 509 A.2d 942 (1986). Based on our review of the whole record in this case, we conclude that the referee and WCAB did not err in determining that Ruhl failed to satisfy his burden of proving a compensable disability as of October 2, 1984.

Although we determine that Ruhl sustained a work-related injury on February 29, 1984, this issue is not determinative

the Claimant has not sustained his burden to show that his present problems, including the total knee replacement, are related to any work related injury.
(R.R. 149–150).

4. Relying on *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979), Ruhl also argues that the injury need not be the exclusive cause of the disability. Rather, to entitle claimant to benefits, it is sufficient that the injury aggravate or accelerate a pre-existing condition. While this statement is accurate, Ruhl has waived the opportunity to apply this principle here by failing to raise it as an issue before the referee. Therefore, we decline to address it. *See General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Commonwealth Ct. 461, 593 A.2d 921 (1991), *appeal denied*, 529 Pa. 626, 600 A.2d 541 (1992).

here because the injury forced Ruhl to miss only three days of work, which was an insufficient amount of time for him to collect benefits. Thus, we agree with the WCAB that Ruhl is not entitled to workmen's compensation benefits and affirm its order.

## ORDER

AND NOW, this 1st day of June, 1992, the order of Workmen's Compensation Appeal Board, dated July 16, 1991, is affirmed.