IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JBS Distribution LLC,                           :
                Petitioner         :
                                      :
               v.                           :  No. 3 C.D. 2016
                                        :  SUBMITTED:  August 19, 2016
Workers' Compensation Appeal           :
Board (Delgado),                                :
                Respondent         :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE HEARTHWAY                    FILED:  November 16, 2016


        JBS Distribution LLC (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the order of a Workers' Compensation Judge (WCJ) granting the petition for review/ reinstatement filed by Mirta Irizarry-Delgado (Claimant).  Employer argues the WCJ's decision was not supported by substantial, competent medical evidence.  It contends the opinions of Claimant's medical expert were insufficient to show a causal relationship between the work injury and Claimant's current condition.  Specifically, Employer asserts the opinions of Claimant's expert were based on material inaccuracies and equivocal as a matter of law.  Because the Board affirmed the WCJ, who relied on incompetent and equivocal medical evidence, Employer claims the Board committed reversible error.  We agree and reverse to

the extent the Board amended the work injury to include an aggravation of the degenerative lumbar disc disease and an aggravation of the chronic right shoulder pain.

## I. Background

Claimant worked for Employer for 12 years as a meat inspector. Her duties included standing on a ladder, pulling frozen hamburger using a meat hook, and inspecting pieces of meat weighing about 40 pounds. On October 2, 2012, she sustained a work injury when she fell from a ladder onto a concrete floor, striking her left elbow. At that time, Employer's infirmary treated her left elbow. Claimant does not speak English so she communicated her injuries through a Spanish interpreter. She marked only her left elbow on the pain diagram Employer provided, which was in English. Employer issued a medical-only notice of compensation payable, accepting a left elbow contusion as the work injury.

Claimant continued to work in a full-duty capacity until July 26, 2013, when she stopped work based on the advice of her treating physician, Stuart Kauffman, D.O., who is board certified in family practice (Treating Physician). Claimant then filed a review/reinstatement petition to expand the work injury description to include lumbar pathology and seeking ongoing wage loss benefits based on Treating Physician's opinion. He recommended Claimant stop work because her job "[was] pretty rigorous … requiring lifting and standing and pulling and pushing and manipulating the upper extremities. I [didn't] feel she could safely do that currently with the condition she has." Reproduced Record (R.R.) at 78a.

In December 2013, Employer filed a termination petition based on an independent medical examination (IME), alleging Claimant's full recovery.

2

William H. Spellman, M.D., a board-certified orthopedic surgeon, performed the IME (Employer's Expert).

The WCJ conducted hearings on the parties' petitions. In support of her review/reinstatement petition, Claimant testified on her own behalf and she presented the deposition testimony of Treating Physician.

Claimant testified regarding her injury and her medical condition. While descending from a ladder, her foot became caught in a hose at the last step, causing her to lose her balance and fall to the concrete floor. She put her arm out to break her fall and struck her left elbow on a metal grate. When she landed, she "felt [her] back crack" at her belt line. R.R. at 21a. She explained she marked only the left elbow on Employer's pain diagram at the infirmary because that was where the nurse told her to mark, and they did not let her mark all the areas she felt pain. She testified she felt pain on her "entire body." R.R. at 39a. She did not seek outside treatment for almost four months because the nurse advised her she could not see an outside doctor for three months. In March 2013, Claimant first sought treatment for her low back pain with Dr. Panagiotis Zenetos.[1] She testified she did not experience low back pain before her work injury. R.R. at 35a.

Treating Physician focuses half of his practice on pain management. He began treating Claimant for her shoulder and low back pain in June 2013. He did not treat Claimant for her left elbow, and emphasized "her main problems are her [right] shoulder and her low back." R.R. at 103a. He observed Claimant lost range of motion in her right shoulder, lost flexion in her lumbar spine, and had spasms in her low back. He noted Claimant had a prior work injury in 2002 to her

_____

[1] Claimant testified she did not continue treating with Dr. Zenetos because he was located in New York, and "it was really hard for [her] to get there." Reproduced Record (R.R.) at 24a.

3

right shoulder. Based on his review of Claimant's 2013 MRIs of her lumbar spine, right shoulder, and left elbow, his observation and her medical history, he diagnosed Claimant with "chronic low back pain due to multilevel disc herniations, anterior spondylolisthesis, and neuroforaminal impingement at L4. … chronic right shoulder pain, which is an aggravation of a preexisting shoulder condition, as well as chronic left elbow pain." R.R. at 77a.

Treating Physician opined Claimant's shoulder and spinal conditions "certainly would be – could be consistent with a patient falling as [Claimant] had done at work on that injury of 10/2/12." R.R. at 68a. On re-direct, he explained the lumbar MRI showed degenerative and non-degenerative changes that consisted of "herniated discs, as well as spondylolisthesis, as well as the right-sided foraminal stenosis, which is probably a combination of degenerative as well as nondegenerative changes." *Id*. at 105a. He opined a fall such as the one Claimant described could aggravate underlying degenerative conditions. Assuming her right shoulder conditions predated the work injury, he opined the fall could potentially aggravate those conditions.

In support of its termination petition, Employer presented the deposition testimony of Employer's Expert. When examining her for the IME, Employer's Expert opined that Claimant did not manifest symptoms from her right shoulder. As to her low back, he observed "a slight induration extending from the L3 spinous process distally to the sacrum and laterally to the iliac crest …" from which she had ongoing problems. R.R. at 136a. He opined only the left elbow contusion related to her work injury. *Id.* at 142a-43a.

Based on the record evidence, the WCJ granted Claimant's review/ reinstatement petition. She concluded Claimant "met her burden … that her work

4

injuries were more extensive than a left elbow contusion and included injuries to her low back and right shoulder," Conclusion of Law No. 2, and amended the work injury "to include an aggravation of degenerative lumbar disc disease, an aggravation of her chronic right shoulder pain, and left elbow chondramalcia." WCJ Op., 11/4/14, Finding of Fact (F.F.) No. 11. The WCJ also found Claimant's condition worsened as of June 27, 2013, causing total wage loss, and awarded ongoing wage loss benefits at a weekly rate of $512.19. The WCJ denied Employer's termination petition. The WCJ credited the testimony of Claimant and Treating Physician, and she rejected the testimony of Employer's Expert as "too simplistic," F.F. No. 9, and undermined by the 2013 MRIs, F.F. No. 2(d). Specifically, she credited Treating Physician's opinion "that Claimant sustained low back injuries and aggravation of chronic right shoulder pain, and left elbow injuries as a result of her fall at work … because it is supported by the MRI tests." F.F. No. 8. Employer appealed to the Board.

The Board affirmed, concluding Treating Physician's opinion was competent evidence supporting the expanded injury description and the award of wage loss benefits. Bd. Op., 12/10/15, at 7. Employer filed a petition for review to this Court, only as to the grant of Claimant's review/reinstatement petition.

## II. Discussion

On appeal,[2] Employer argues the Board committed reversible error by affirming the WCJ's order because her findings were based on Treating Physician's incompetent and equivocal medical opinions. Specifically, Employer asserts

---

[2] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth. 2011).

5

Treating Physician's opinion is incompetent as a matter of law because it is based on inaccuracies. Employer also contends Treating Physician's opinion as to causation of Claimant's lumbar condition is equivocal.

Claimant bears the burden of proof on her review/reinstatement petition. *Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 872 A.2d 159 (Pa. 2005) (review petition); *Dillon v. Workmen's Comp. Appeal Bd. (Greenwich Collieries)*, 640 A.2d 386 (Pa. 1994) (reinstatement petition). If an employer fails to present contrary credible evidence, the claimant's testimony, if credited by the WCJ, is sufficient to support a reinstatement of benefits. *Harding v. Workers' Comp. Appeal Bd. (Arrowhead Indus.),* 706 A.2d 896, 900 (Pa. Cmwlth. 1998). When a claimant seeks to amend a work injury through a review petition, she has the burden to prove her disability has increased and that the original work injury caused the amended disability. *Jeanes Hosp.*; *Huddy v. Workers' Comp. Appeal Bd. (U.S. Air)*, 905 A.2d 589 (Pa. Cmwlth. 2006).

"Unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident." *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011). The equivocality of a medical opinion is a question of law fully reviewable by this Court. *Carpenter Tech. v. Workmen's Comp. Appeal Bd. (Wisniewski)*, 600 A.2d 694 (Pa. Cmwlth. 1991). Similarly, the competency of medical evidence is a legal conclusion reviewable on appeal. *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197 (Pa. Cmwlth. 2006).

By contrast, it is solely for the WCJ as fact-finder to assess credibility and resolve evidentiary conflicts. *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164 (Pa. Cmwlth. 2003). As such, the WCJ may

6

reject the testimony of any witness, in whole or in part, including medical experts. *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72 (Pa. Cmwlth. 2000). A single medical expert's testimony is a reasonable basis upon which a WCJ may base a finding of fact despite conflicting evidence. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan),* 572 A.2d 838 (Pa. Cmwlth. 1990), *aff'd*, 612 A.2d 434 (Pa. 1992).

## A. Accurate Foundation

Employer challenges the competence of Treating Physician's opinion because it did not account for Claimant's alleged long history of low back pain. Employer relies on *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.)*, 692 A.2d 1062 (Pa. 1997), and *Chik-Fil-A v. Workers' Compensation Appeal Board (Mollick)*, 792 A.2d 678 (Pa. Cmwlth. 2002) in support.

Both *Newcomer* and *Chik-Fil-A* involved medical opinions that were based on inaccurate medical histories. In both cases, the medical experts' opinions were rejected as incompetent because the opinions were contrary to other evidence of record and were inconsistent with the claimants' medical history. Both cases are distinguishable from the circumstances here.

In *Newcomer*, the claimant sought reinstatement of benefits for a shoulder injury more than two years after sustaining a work injury to the chest. In lieu of medical records documenting the original injury, the testifying physician relied solely on the medical history reported by the claimant. In that history, the claimant reported he injured his shoulder in the initial work incident. Crucially, the claimant's later account of the injury to the physician differed from his description in initial treatment records and earlier hearings, when he did not mention a shoulder injury. Based on this discrepancy, the Board rejected

7

physician's testimony regarding causation of the shoulder injury as incompetent. Our Supreme Court agreed with the Board, holding that testimony based on a false medical history was incompetent as a matter of law.

In *Chik-Fil-A*, the claimant sought compensation for a back injury. She claimed she had not experienced severe back pain before a work incident. However, on cross-examination, she acknowledged she treated for back and neck pain for more than 10 years. Notably, claimant's medical expert did not review prior medical records. Rather, her expert based his opinions solely on claimant's false medical history, despite its inconsistency with his own test results. Because the expert's opinion was based on claimant's false medical history, and was inconsistent with test results, this Court held the opinion lacked proper foundation.

Employer's argument and reliance on *Newcomer* and *Chik-Fil-A* assumes that Claimant rendered a false medical history to Treating Physician, who in turn, relied on that history for his opinion. However, unlike the above cases, there is no evidence in the case before us that Claimant lied about her injury or her medical history.

Employer assumed Claimant experienced a long history of back pain based on the records of Dr. Zenetos, who treated her from March through July 2013. During cross-examination, Employer characterized the records as showing Claimant had back pain of a gradual onset for more than 15 years. Treating Physician confirmed the records stated Claimant had pain for more than 15 years; however, the note did not specify back pain. R.R. at 87a. Thus, he believed Claimant that she did not experience low back pain before the work injury.

8

Notably, these medical records are not part of the evidentiary record. Yet, they are the only basis from which Employer surmises Claimant rendered a false medical history to Treating Physician.

Treating Physician's review and understanding of another physician's medical records does not undermine the competency of his opinion. At most, his review of other medical records goes to the weight of his testimony, which is within the exclusive purview of the factfinder. *Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel)*, 837 A.2d 623 (Pa. Cmwlth. 2003).

Regardless, a medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information. *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14 (Pa. Cmwlth. 2008). Here, Treating Physician's opinion is based on his personal observations, his 6-month treatment history, and his review of Claimant's medical records, including objective diagnostic studies of her lumbar spine, right shoulder and left elbow. These form a proper foundation for his medical opinions.

Unlike the records in *Newcomer* or *Chik-Fil-A*, here, the evidence reflects no long-standing history of back pain. To the contrary, Claimant testified she did not previously experience low back pain. R.R. at 35a. The WCJ credited her testimony. F.F. No. 6. We do not disturb a WCJ's credibility determinations on appeal. *Waldameer Park.* Claimant's testimony, which is not contradicted by other record evidence, constitutes competent evidence that is consistent with the medical history relied upon by Treating Physician. Accordingly, we reject Employer's challenge to the competence of Treating Physician's opinion.

9

**B. Equivocality**

Employer also contends that Treating Physician's opinion "that the cause of these conditions ***can be consistent*** with the type of fall and injury [Claimant] sustained on 10/2 of 2012" is equivocal. R.R. at 77a-78a (emphasis added). Employer maintains that use of the word "could" or "can" connotes possibility, rendering his opinion equivocal as a matter of law.

We determine equivocality by reviewing a medical expert's testimony in its entirety. *Lewis v. Workmen's Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 498 A.2d 800 (Pa. 1985). "A medical witness's use of words such as 'probably,' 'likely,' and 'somewhat' will not render an opinion equivocal so long as the testimony, read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed." *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth. 2011).

However, our Supreme Court consistently holds "statements that an assigned cause 'could have' been the cause of the condition have repeatedly held to be legally insufficient." *Cardyn v. Workmen's Comp. Appeal Bd. (Heppenstall)*, 534 A.2d 1389, 1392 (Pa. 1987); *see Lewis,* 498 A.2d at 800 (expert vacillated with repeated use of "could have" as to causation). "Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause." *Id*. at 802; *see also Jones v. Workers' Comp. Appeal Bd. (J.C. Penney Co.),* 747 A.2d 430, 431 (Pa. Cmwlth. 2000) (reversing Board's affirmance of WCJ; expert testimony using "could have" and "it's possible" is equivocal).

Reviewing Treating Physician's testimony as a whole, we are not convinced that it meets the legal standard for an unequivocal medical opinion. Here, Treating Physician had multiple opportunities to testify within a reasonable medical certainty as to causation, and he failed to do so. He testified as follows:

[Direct]

Q: Did you have an opinion at that time regarding the cause of all those injuries that you just recited?[3]

A: Based on the patient's history and physical exam, as well as some of the diagnostics studies that I reviewed, it certainly would be—*could be* consistent with a patient falling as [Claimant] had done at work on that injury of 10/2/12.

\*\*\*\*

Q: What is your opinion regarding the cause of all those conditions?

A: I believe that the cause of these conditions *can be* consistent with the type of fall and injury that she sustained on 10/2 of 2012.

\*\*\*\*

[Cross]

Q: "[As to the right shoulder MRI] [s]o the impressions that are noted in the April 2, 2013 portion of the MRI report that are listed here one through five, it's possible all of these conditions *could have been* in [Claimant's] shoulder prior to October 2, 2012?

A: Absolutely.

Q. Doctor, I guess the same would follow with respect to the MRI of the lumbar spine on March 21, 2013 in that you didn't review any study of her lumbar spine before March 21, 2013?

---

[3] Treating Physician testified that Claimant "has chronic low back pain associated with multilevel disc herniations and anterior spondylolisthesis with neuroforaminal impingement at L4, aggravation of pre-existing right shoulder pain, and rotator cuff injury to the right shoulder, and a Hill-Sachs deformity of the right shoulder." R.R. at 67a.

A. Correct.

Q. So *the conditions* that were noted on March 21, 2013 *could have existed* prior to October 2, 2012?

A. It's quite possible.

****

Q. Doctor, you would agree with me that someone that has – she's 60 years old – someone that has significant pre-existing degenerative conditions in their [sic] spine *can experience* herniations without the incident of trauma?

A. Sure. Sure. Disc herniations *can* occur without a specific trauma in some patients, yes. That's true.

****

Q: You'd agree with me that that type of information [mechanism of injury] might be important in rendering a determination as to causation?

A: It can certainly be important. But it wouldn't change my opinion because any type of fall *could* certainly *cause* any of these injuries.

****

[Redirect]

Q: [Regarding the degenerative changes in the lumbar MRI], would a fall such as the one that [Claimant] described to you, *could that potentially* aggravate underlying degenerative conditions?

A: Yes. Absolutely.

****

Q: "[As to the shoulder MRI], would a fall of this nature –*could it potentially* aggravate any of the conditions listed in that study?

A: Yes.

Q: Similarly, *could* any of those impressions or findings on that study be caused by a traumatic incident?

A: Yes.

12

\*\*\*\*

Q: Could a trauma such as the one [Claimant] described to you cause injuries of that nature?

A: Yes.

R.R. at 68a, 77a-78a, 91a-92a, 93a, 96a, 105a-06a (emphasis added).

These quoted excerpts from Treating Physician's testimony reveal he used the same phrasing, "could," when he testified Claimant's conditions stemmed from other causes as when he attributed causation to her work injury. At best, Treating Physician testified that the work injury could have caused Claimant's lumbar condition and aggravated her right shoulder injury. The only time he opined using the definitive term "would," he immediately qualified it, testifying Claimant's conditions "*could be* consistent with a patient falling as [Claimant] had done…." R.R. at 68a (emphasis added). As such, Treating Physician's opinion is equivocal as a matter of law. *See Merchant v. Workers' Comp. Appeal Bd. (TSL, Ltd.)*, 758 A.2d 762, 770-71 (Pa. Cmwlth. 2000) (expert who at "*most …* was willing to say that the [condition] 'could be' or 'probably' was related to the work incident" is equivocal) (emphasis in original).

Although Claimant reported no history of low back pain until her fall onto Employer's concrete floor, the WCJ did not find that the cause and effect between her fall and her lower back condition were "so immediate, direct, and natural to common experience as to obviate any need for expert medical opinion." *Sokol v. Workmen's Comp. Appeal Bd. (State Reg'l Corr. Facility at Mercer)*, 497 A.2d 670, 671 (Pa. Cmwlth. 1985). Indeed, Claimant continued working, without restrictions, for almost ten months after her fall. F.F. Nos. 1(c), 1(f), 6.

Because unequivocal medical testimony is required to establish causation of the alleged expanded injury, Claimant failed to establish her 2012 fall

13

caused "an aggravation of degenerative lumbar disc disease, an aggravation of her chronic right shoulder pain, and left elbow chondramalacia." F.F. No. 11. Treating Physician's testimony on the causation of all of Claimant's expanded injuries is accordingly deemed not to be sufficient as a matter of law. However, because Claimant limited the relief sought to only the lumbar and right shoulder, we reverse only that portion of the Board's order pertaining to the lumbar and right shoulder.

### III. Conclusion

For the foregoing reasons, the Board's order is reversed to the extent it affirmed the WCJ's amendment to the work injury to include an aggravation of the degenerative lumbar disc disease and an aggravation of the chronic right shoulder pain and the Board's order is affirmed to the extent it affirmed the WCJ's amendment of the work injury to include left elbow chondromalacia.

_____
JULIA K. HEARTHWAY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JBS Distribution LLC,             :
           Petitioner     :
                      :
        v.              :  No. 3 C.D. 2016
                      :
Workers' Compensation Appeal   :
Board (Delgado),           :
           Respondent   :

## O R D E R

AND NOW, this 16th day of November, 2016, the order of the Workers' Compensation Appeal Board is REVERSED to the extent it affirmed the amendment to the work injury to include an aggravation of the degenerative lumbar disc disease and an aggravation of the chronic right shoulder pain, and the Board's order is AFFIRMED to the extent it affirmed the amendment of the work injury to include left elbow chondromalacia.

_____
JULIA K. HEARTHWAY, Judge