# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Holy Redeemer Health System, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 768 C.D. 2016 |
| | : | Argued: May 1, 2017 |
| Workers' Compensation Appeal | : | |
| Board (Lux), | : | |
| Respondent | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY JUDGE BROBSON            FILED:  June 6, 2017

Petitioner Holy Redeemer Health System (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of a Workers' Compensation Judge (WCJ), granting the claim petition filed by Jennifer Lux (Claimant) and denying the termination petition filed by Employer.  For the reasons set forth herein, we now affirm the Board's order.

Claimant worked for Employer as a telemetry R.N.  On October 11, 2011, Claimant sustained a work-related soft tissue injury to her lumbar spine.  Employer accepted liability for Claimant's work-related injury pursuant to a medical-only Notice of Compensation Payable.  On September 18, 2014, Claimant filed a claim petition, asserting that she sustained a lumbar sprain, facet arthropathy, and radiculitis while working for Employer on

October 11, 2011, and that she is partially disabled as a result thereof.[1]  Thereafter, on September 26, 2014, Employer filed a termination petition, asserting that Claimant had fully recovered from her work-related injury as of February 15, 2013.

Claimant testified by deposition on November 11, 2014, and before the WCJ at a hearing held on May 6, 2015.  Claimant explained that in her position as a telemetry R.N., she was responsible for watching patient heart monitors, administering medications and IV fluids, and helping nursing assistants with patient toileting, bathing, transporting for diagnostic studies, vital signs, and Accu-Cheks.  (Reproduced Record (R.R.) at 20a.)  In order to perform these duties, Claimant was required to bend, squat, twist, lift, carry, and maneuver patients.  (*Id.* at 20a-21a, 125a.)  As a telemetry R.N., Claimant was paid approximately $38 to $39 per hour and worked twenty-four hours per week, but she would also pick up additional shifts in the wintertime.  (*Id.* at 21a-22a, 124a.)

Claimant testified further that on October 11, 2011, she had been pulled to a neurology floor to work as an aide.  (*Id.* at 23a.)  Claimant explained that she was bent over at the waist attempting to bathe and change a stroke patient who had been paralyzed, when she experienced a sharp, stabbing, and excruciating pain in her back.  (*Id.* at 23a-24a.)  Claimant immediately sought treatment for her work-related injury from Employer's emergency department and was released to return to work in a light-duty capacity.  (*Id.* at 30a.)  Thereafter, Claimant treated

---

[1] Claimant initially sought partial disability benefits from October 11, 2011, the date of her work-related injury.  (Reproduced Record (R.R.) at 4a-8a.)  Claimant subsequently amended her request and sought partial disability benefits from the date on which she started working in a permanent care management position with Employer in February 2013, at which time she suffered a loss of wages.  (*Id.* at 134a.)

with Occupational Health and Leonard A. Bruno, M.D. (Dr. Bruno). (*Id.* at 25a-28a.) During that time, Claimant remained under light-duty restrictions. (*Id.* at 48a, 132a.) Claimant reported that her back pain has improved since the October 11, 2011 work-related injury, but she continues to experience pressure and a burning, uncomfortable, dull pain in her low back, she cannot sit or stand for prolonged periods of time, and she experiences pain with bending and lifting. (*Id.* at 37a-38a, 41a, 126a, 129a.) Claimant reported further that prior to October 11, 2011, she did not have any problems with her back. (*Id.* at 29a, 38a.)

Claimant did not have any time off of work following her October 11, 2011 work-related injury. (*Id.* at 29a.) Rather, Claimant returned to a modified-duty position with Employer in her pre-injury telemetry unit with no loss of wages. (*Id.* at 30a-31a.) Toward the end of 2012, Employer's nursing office requested that Claimant also assist in the care management department performing "opens." (*Id.* at 31a, 132a.) This involved verbally interviewing patients and their family members to determine the patients' home set-ups and what the patients were capable of doing at home, and then entering all the information obtained onto computer assessment forms. (*Id.* at 31a-32a.) In February 2013, while she was assisting in the care management department but also continuing to work modified duty as a telemetry R.N., Employer created a permanent, available position in the care management department and offered it to Claimant. (*Id.* at 44a-45a, 132a.) Employer did not force or require Claimant to leave her modified-duty telemetry R.N. position. (*Id.* at 45a.) Dr. Bruno also did not require Claimant to stop performing the modified-duty telemetry R.N. position. (*Id.* at 134a-35a.) Claimant accepted the permanent care management position voluntarily. (*Id.* at 45a.)

3

Claimant testified that in the permanent care management position, she is paid approximately $30 per hour and works twenty hours per week. (*Id.* at 32a, 124a-25a.) Claimant explained that she sometimes works more than twenty hours per week when she has not completed her work on time or is on-call. (*Id.* at 36a.) In September 2014, more than a year after she voluntarily accepted the permanent care management position, Claimant contacted Employer's human resources department to determine whether she could return to her pre-injury, telemetry R.N. position. (*Id.* at 33a-34a, 43a-44a.) At that time, Claimant was informed that she could not apply for an R.N. position in the nursing department while on light duty. (*Id.* at 33a.) Claimant explained that she wanted to return to any nursing position, not specifically her pre-injury position, because she was losing her nursing skills, she was not receiving any continuing education, she no longer had her certifications, and she had suffered a loss in wages while working in the care management department. (*Id.* at 34a, 130a-31a.) Claimant attributed the loss in wages to her October 11, 2011 work-related injury. (*Id.* at 34a.) Around that same time, Claimant returned to Dr. Bruno and requested that he release her to return to nursing. (*Id.* at 44.) Claimant explained that she was not certain whether she could return to a full-time R.N. position, but she stated that it would probably depend on the specific position and the hours. (*Id.* at 131a.) Claimant explained further that she did not think that she could perform a full-time R.N. position that required heavy lifting or bending. (*Id.*) As of the May 6, 2015 hearing, Claimant continued to work for Employer in the care management position. (*Id.* at 123a.)

In support of her claim petition and in opposition to Employer's termination petition, Claimant presented the deposition testimony of Dr. Bruno,

4

who is board certified in neurological surgery.[2]  Dr. Bruno first treated Claimant on December 27, 2011.  (*Id.* at 86a.)  After obtaining a history, performing a physical examination, and reviewing a December 6, 2011 MRI of Claimant's lumbar spine, Dr. Bruno diagnosed Claimant with a work-related lumbar sprain that had resulted in lumbar facet arthropathy.[3]  (*Id.* at 86a-90a.)  Dr. Bruno opined that while Claimant is not capable of returning to her pre-injury nursing position, she is and always has been capable of performing either light-duty or sedentary-duty work. (*Id.* at 92a, 97a.)  Dr. Bruno agreed that at no time in the course of his treatment of Claimant was Claimant incapable of performing the light-duty position as a telemetry R.N. with Employer.  (*Id.* at 98a.)  In September 2014, upon Claimant's request, Dr. Bruno agreed to release Claimant to perform her pre-injury nursing position on a trial basis.  (*Id.* at 92a-93a, 101a.)  Dr. Bruno did not know whether Claimant thereafter decided she was not able to return to her pre-injury nursing position or whether Employer did not permit her to do so.  (*Id.* at 93a, 101a.)  To Dr. Bruno's knowledge, Claimant continues to work for Employer under light-duty restrictions.  (*Id.* at 96a.)

On September 30, 2015, the WCJ issued a decision, granting Claimant's claim petition and denying Employer's termination petition.  In so doing, the WCJ summarized the witnesses' testimony, made credibility

---

[2] In opposition to Claimant's claim petition and in support of its termination petition, Employer presented the deposition testimony of Neil Kahanovitz, M.D., who performed an independent medical examination of Claimant on February 15, 2013.  Dr. Kahanovitz's testimony, however, is not relevant to Employer's arguments on appeal and, therefore, such testimony will not be summarized or addressed in this opinion.

[3] Dr. Bruno also initially diagnosed Claimant with radiculitis, but he indicated that that condition had resolved by March 6, 2012.  (R.R. at 99a-100a.)

determinations, and made factual findings. Ultimately, the WCJ concluded: (1) Claimant met her burden of proving that her October 11, 2011 work-related injury caused her to be "unable to perform her time of injury job as a [t]elemetry [R.N.] and [that she] began to suffer a loss of earning power due to the ongoing symptoms from the October 11, 2011 injury[,] causing her to take the [c]are [m]anage[ment] position[;]" and (2) Employer failed to meet its burden of proving that Claimant had fully recovered from her work-related injury as of February 15, 2013. (WCJ's Decision at 16.) Employer appealed to the Board, which affirmed the WCJ's decision. Employer then petitioned this Court for review.

On appeal,[4] Employer argues that the WCJ committed an error of law in granting Claimant's claim petition.[5] More specifically, Employer contends that

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] Employer also argues that the WCJ's finding of fact regarding Claimant's testimony that she suffered from ongoing symptoms as a result of her work-related injury, which caused her ongoing limitations on her ability to work and caused her to accept the permanent care management position is not supported by the evidence of record. (*See* WCJ's Decision at 14-15.) While we recognize that there may be some merit to Employer's argument, as there does not appear to be any evidence in the record regarding the specific reasons why Claimant accepted the permanent care management position, Employer also takes the position that the WCJ's finding is immaterial to this appeal. In fact, Employer reasons that whether such finding is supported by the evidence of record is not relevant to the analysis on appeal, because the legal question presented is not whether Claimant's work-related injury was a factor in her decision to accept the permanent care management position, but rather whether Claimant's loss of earning power was caused by her inability to perform the modified-duty telemetry R.N. position. For these reasons, we will address Employer's argument as solely a question of law. Thus, the only issue to be decided in this appeal relates to whether Claimant sustained her burden of proof under
**(Footnote continued on next page…)**

6

Claimant could not have sustained her burden of proof because Dr. Bruno's credible testimony confirms that Claimant was capable of performing the light-duty position made available to her by Employer and Claimant never testified that her ongoing limitations forced her to switch from the light-duty position as a telemetry R.N., with some care management duties, to the permanent position in the care management department. In support of this argument, Employer relies on *Shenango, Inc. v. Workmen's Compensation Appeal Board (Weber)*, 646 A.2d 669 (Pa. Cmwlth. 1994), wherein this Court held that the claimant's loss of wages was not the result of his physical limitations from his work-related injury, but rather the claimant's voluntary decision to bid out of his pre-injury department where he had been working in a modified-duty position with no loss of earnings. Employer contends that this case is similar to *Shenango* because Claimant, like the claimant in *Shenango*, "remained capable of performing work made available in her pre-injury department and presented no evidence suggesting that she was required to take the job" in the care management department. (Employer's Br. at 16.)

In response, Claimant argues that she met her burden of proving her entitlement to partial disability benefits because the record establishes: (1) she sustained a work-related injury while working for Employer on October 11, 2011; (2) she returned to her pre-injury position in a light-duty capacity following her

---

**(continued…)**

the claim petition—*i.e.*, whether Claimant affirmatively established that she has suffered a loss of earning power as a result of her October 11, 2011 work-related injury.

Employer did not appeal the denial of its termination petition or any issues related thereto.

7

work-related injury; (3) she was offered and accepted a second, light-duty position with Employer in the care management department; and (4) she suffered a loss of wages as a result of accepting the second, light-duty position in the care management department. Claimant argues further that Employer's reliance on *Shenango* is misplaced because Claimant did not seek out the permanent care management position, but rather Employer offered her the position, and Employer did not present any evidence to dispute Claimant's testimony that there were no open and available light-duty positions in the telemetry unit that were within Claimant's restrictions.

The legal question to be decided in this case is whether a claimant who has returned to work in a modified-duty position with her pre-injury employer at no loss of wages and who later voluntarily accepts a permanent position offered to her by her pre-injury employer at a loss of wages suffers a loss of earning power caused by the work-related injury. In a claim petition, a claimant bears the burden of proving all the necessary elements for an award of workers' compensation benefits. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove not only that she sustained a work-related injury, but also that the work-related injury is the cause of her disability. *Cardyn v. Workmen's Comp. Appeal Bd. (Heppenstall)*, 534 A.2d 1389, 1390 (Pa. 1987). "Disability" is synonymous with "earning power" and is more specifically defined as a "loss of earning power attributable to the work-related injury." *Landmark Constructors, Inc. v. Workers' Comp. Appeal Bd. (Costello)*, 747 A.2d 850, 854 (Pa. 2000). Under Section 306(b) of the Workers'

8

Compensation Act (Act),[6] a claimant is entitled to partial disability benefits if her earning power is decreased as a result of her work-related injury. Thus, a claimant whose earning power is not affected by her work-related injury is not entitled to partial disability benefits, even though her earnings may be less than her pre-injury earnings. *See Harle v. Workmen's Comp. Appeal Bd. (Tel. Press, Inc.)*, 658 A.2d 766, 769 (Pa. 1995).

The parties do not dispute that Claimant had returned to work following her October 11, 2011 work-related injury in a modified-duty position with Employer as a telemetry R.N. at no loss of earnings. The parties also do not dispute that Claimant thereafter was offered and voluntarily accepted a permanent position created by Employer in the care management department and suffered a loss of wages or that Claimant remained capable of performing the modified-duty telemetry R.N. position at the time that she accepted the permanent care management position. Rather, the parties dispute the effect of Claimant's voluntary acceptance of the permanent care management position and whether such voluntary acceptance resulted in a loss of earning power attributable to Claimant's work-related injury. Employer urges this Court to follow our prior decision in *Shenango* and hold that Claimant failed to meet her burden of proving that her loss of earning power was attributable to her work-related injury because Claimant voluntarily accepted the permanent care management position and was not forced to do so by Employer. *Shenango*, however, is distinguishable from the facts of this case for one very important reason: the claimant in *Shenango* made the affirmative decision to bid out of his pre-injury department on a position that

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512.

9

resulted in a loss of his seniority and a loss of wages. *Shenango*, 646 A.2d at 670-72.

Here, Claimant did not seek out and apply for the permanent care management position. Rather, Employer specifically created the position and offered it to Claimant. Given the nature of the Act[7] and its intended purpose to protect individuals who suffer work-related injuries and given the fragile nature of claimants, we cannot extend our holding in *Shenango* under these circumstances. There is no evidence in the record to suggest that Employer forced Claimant to accept the permanent care management position or that Employer informed Claimant that the modified-duty telemetry R.N. position would no longer be available to her. We cannot ignore, however, the fact that Employer, on its own, created and offered Claimant a permanent light-duty position within her restrictions at a loss of earnings for which it now claims no liability. Employer could have kept Claimant in her modified-duty telemetry R.N. position with some care management duties at no loss of earnings, or Employer could have placed Claimant into the permanent care management position and treated such position as a modified-duty workers' compensation position, thereby entitling Claimant to partial disability benefits until her work-related injury was no longer the cause of her disability. We simply cannot permit employers to evade the payment of pre-injury wages or partial disability benefits by creating and offering permanent, lower-paying positions to claimants that are within the restrictions imposed by the claimants' work-related injuries. As a result, we must follow the intent and purpose of the Act and hold that a claimant suffers a loss of earning power

---

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

10

attributable to her work-related injury when she returns to work in a modified-duty position with her pre-injury employer and thereafter accepts a permanent position specifically created and offered to her by her pre-injury employer at a loss of wages. For these reasons, we cannot conclude that the WCJ committed an error of law in granting Claimant's claim petition.

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holy Redeemer Health System, : 
                 Petitioner : 
                              : 
           v. : No. 768 C.D. 2016
                              : 
Workers' Compensation Appeal : 
Board (Lux), : 
                 Respondent : 

# **O R D E R**

AND NOW, this 6th day of June, 2017, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
P. KEVIN BROBSON, Judge