Michael RIFE, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (WHITETAIL SKI COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 20, 2002.
Decided Dec. 9, 2002.

---

William P. Douglas, Carlisle, for petitioner.

Jennifer Chun Strawn, Philadelphia, for respondent.

BEFORE: GARDNER COLINS, President Judge, SMITH–RIBNER, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Michael Rife (Claimant) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which affirmed in part and reversed in part the decision of the Workers' Compensation Judge (WCJ). The Board reversed to the extent that the WCJ awarded ongoing compensation benefits to Claimant and affirmed the decision granting the claim petition, recognizing the work injury and awarding payment of work-related medical expenses. We reverse the Board.

Claimant presented the deposition testimony of S. Chandra Swami, M.D. (Dr. Swami), a general practitioner. Dr. Swami saw Claimant for the first time on July 24, 2000. Dr. Swami diagnosed the Claimant with clinical Lyme disease and determined that Claimant contracted the Lyme disease from a tick bite that occurred while he was performing a task for his prior employer, Whitetail Ski Company (Whitetail). Dr. Swami stated that he could not comment on Claimant's complaints prior to his first appointment on July 24, 2000, nor could he comment as to whether Claimant was able to perform his job at Whitetail at the time that he quit or at the present time, as he was unaware of what Claimant's job entailed. Dr. Swami Deposition, November 30, 2000. Dr. Swami testified that Lyme disease "is mistaken for everything, for all sorts of arthritis, or all sorts of psychiatric existence, cardiac problems, you name it." Dr. Swami Deposition at 18. Dr. Swami found it characteristic of Lyme disease that Claimant's headaches came and went although he could not explain why the symptoms were sporadic. Dr. Swami Deposition at 24–25. Dr. Swami also stated that

Lyme disease causes Photophobia, light sensitivity, and that Claimant was unable to be outside in the sun without proper protection. Dr. Swami stated that a person with Lyme disease could suffer up to third degree burns if not properly protected when in the sun and that these burns could occur while riding in a car. Dr. Swami Deposition at 21–22, 32–33.

Next, Claimant testified on his own behalf. Claimant stated that he left his employment with Whitetail in October of 1999 because of severe headaches and to reduce his stress level, as stress inflames Lyme disease. Claimant stated that he had severe headaches and "quite a few doctors" told him that he was under a lot of stress. "I guess just mentally·I thought that I was under stress and I needed a change." Notes of testimony (N.T.), August 9, 2000, at 15. Claimant found that he was sensitive to sunlight, was tired all the time but mostly in the afternoon. Claimant testified that his job at Whitetail entailed all building and ground maintenance, well and sewage sampling, and operating the water and sewage treatment plant. Claimant stated that most of his job details were outside in the sun. N.T. at 16. Claimant determined that he is physically unable to perform his job at Whitetail. N.T. at 21.

Claimant further testified that he was not told to quit his job due to Lyme disease by any doctor, as he was not so diagnosed by any doctor at the time he left his employment with Whitetail. Claimant stated that working outside at Whitetail was not a problem at that time. He also stated that he told Whitetail that he "just needed a change" when he left. N.T. at 24–25, 33. Claimant was asked by Mr. Hasson, Whitetail's attorney, the following question:

Q: Is there any other reason at all that you left the job at Whitetail, other than

stress relating to that job and needing a change, as you put it?

A: No.

N.T. at 25–26. Claimant testified that his first positive test for Lyme disease was in November or December of 1999, one to two months after he quit his job at Whitetail. N.T. at 12. Dr. Swami testified on cross examination as follows:

Q You said Lyme is the great imitator, meaning it imitates symptoms of other problems?

A That's right. . . . But Lyme is mistaken for everything, for all sorts of arthritis, or all sorts of psychiatric existence, cardiac problems, you name it. Anything has Lyme underlying it. You even get angina with—special type of angina with Lyme disease. So it works on every organ. And therefore, depending on what specialist one goes to, since specialists specialize, they get a specialist diagnosis.

Deposition Testimony of Dr. S. Chandra Swami, M.D. (Dr. Swami Testimony), November 30, 2000, at 18.

The WCJ found as follows:

This Judge thought it was established that claimant had a tick bite and now has Lyme disease from it. The doctor diagnosed Lyme disease unequivocally. Claimant had seen a tick and reported it. Claimant indicated that he had symptoms, was unable to continue at his previous job and found other work. The doctor also indicated that claimant would have these symptoms and in fact was surprised, taking the deposition as a whole, that claimant had worked as much as he did. It was further established that claimant has sensitivity to the sun and has other difficulties from the disease. This Judge thought it was clear that claimant established that he was disabled due to a work injury and continues to be disabled. Claimant is

treating for it but the treatment continues. Claimant may never actually recover. He has ongoing disability. Claimant is entitled to partial compensation.

In addition, claimant established that the various procedures and testing he has undergone were for the Lyme disease.

Claimant had not indicated that the disease had caused him to stop working and, therefore, this Judge thought it was reasonable to contest this matter.

WCJ Decision, May 1, 2001 at 4. The WCJ concluded that:

1. Claimant established that he suffered an injury in the course of his employment which resulted in disability.

2. It was established that defendant/employer had notice of the injury, namely the tick bite.

3. It was established that claimant's injury resulted in disability, such that claimant could not continue performing full duties of his previous job.

4. Claimant established that he had earnings at other easier jobs within his capabilities.

5. Claimant established that the medical bills and expenses incurred were for the treatment of this injury.

6. It was reasonable to contest this matter based on defendant/employer's not being aware that claimant switched jobs due to the injury and due to the length of time.

WCJ Decision, Conclusions of Law Nos. 1–6, at 4–5. The WCJ granted Claimant's petition, awarded modified compensation benefits based upon two-thirds the difference of the average weekly wage and his current wages and made the modified compensation ongoing. The WCJ also found Whitetail responsible for the medical bills

including reimbursing the amounts Claimant paid and reimbursing the amounts other providers paid. WCJ Decision at 5.

■ The Board affirmed in part and reversed in part the WCJ's decision. The Board determined the following:

Upon our review, we determine that the WCJ erred in awarding ongoing disability benefits.... Given the circumstances, the nexus between Claimant's Lyme disease and subsequently alleged disability is not so clear that the untrained lay person could make the connection, *Lebron* [*v. Workmen's Compensation Appeal Board (Dominick Serrao General Landscaping)*, 718 A.2d 870 (Pa.Cmwlth.1998)(citing *Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc)*, 141 Pa. Cmwlth. 438, 595 A.2d 781 (1991)) appeal denied, 529 Pa. 628, 600 A.2d 543 (1991) ], and as a result, Claimant needed to establish work-related disability with unequivocal medical evidence. *Cardyn* [*v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987) ]. Since Dr. Swami was unable to testify unequivocally to the causal connection between Claimant's work injury and disability, we must reverse the WCJ's award of ongoing disability benefits.

Board's Decision, May 15, 2002 at 4–5. The Board reversed the WCJ to the extent that the WCJ awarded ongoing compensation benefits to Claimant and affirmed the decision granting the claim petition, recognizing the work injury and awarding payment of work-related medical expenses. Claimant petitioned our Court for review.[1]

■ Claimant contends that the Board erred in disregarding the findings of fact of the WCJ who found that there was substantial evidence to support ongoing disability on behalf of the Claimant. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Cmwlth.277, 572 A.2d 838 (1990). It exists only when upon examination of the whole record, including the inferences therefrom, it is found to be such that a reasonable man might have reached this decision. *Id.*

Specifically, Claimant contends that he did establish through the deposition testimony of Dr. Swami and his own testimony that he was unable to perform the duties of his employment with Whitetail. Claimant asserts that his testimony, as well as the medical testimony, support the WCJ's determination that Claimant quit his job with Whitetail because he was disabled from Lyme disease.

■ In a claim petition for compensation, the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award, including the burden of establishing a causal relationship between a work-related incident and an alleged disability. *Cardyn.* Where the causal connection between employment and injury is not obvious, the claimant must present unequivocal medical testimony to establish that connection. *Shelestak v. Workmen's Compensation Appeal Board (Bethlehem Mines Corporation)*, 131 Pa.Cmwlth.582, 571 A.2d 516 (1990). The claimant also has the burden of proof in establishing the duration of disability throughout the pendency

---

1. Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

of the claim petition. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis),* 166 Pa.Cmwlth.141, 646 A.2d 51 (1994), *appeal denied,* 541 Pa. 645, 663 A.2d 696 (1995), *citing Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993).

 The WCJ is the ultimate fact finder and has complete authority for making all credibility determinations. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board,* 9 Pa. Cmwlth. 176, 305 A.2d 757 (1973). By reviewing the WCJ's decision, it is obvious that the WCJ accepted the testimony of Dr. Swami and Claimant.

Although the WCJ did not make a specific finding as such, he obviously found the testimony of Dr. Swami and Claimant to be credible and relied on it to support the WCJ's finding of a disability. Dr. Swami testified as to the symptoms of the disease and as to which symptoms Claimant had presently. Claimant then testified as to the symptoms he had at present as well as before he left his employment with Whitetail. In other words, Lyme disease causes sensitivity to the sun called photophobia which can only be successfully treated by antibiotics. However, the antibiotics cause such an increased sensitivity to sunlight that third degree burns are easily incurred. Needless to say, the inappropriateness of outside employment in a ski resort area does not require an expert opinion under such circumstances. It was unnecessary for Claimant to call an expert to testify as to how his Lyme disease related to his leaving his employment with Whitetail. A reasonable person could see the connection between Claimant's Lyme disease diagnosis by Dr. Swami and his leaving his employment a mere one to two months before the actual diagnosis. As Claimant and Dr. Swami sufficiently explained how Claimant's symptoms related

to the Lyme disease, we find that the WCJ's decision was supported by substantial evidence.

Accordingly, we reverse the Board.

### ORDER

AND NOW, this 9th day of December, 2002, the order of the Workers' Compensation Appeal Board in the above captioned matter is reversed to the extent that it reversed the Workers' Compensation Judge's award of ongoing compensation benefits to Claimant. Compensation benefits are reinstated.