IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Regan,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            : No. 1277 C.D. 2020
                                        : Submitted: November 18, 2021
City of Philadelphia (Workers'          :
Compensation Appeal Board),             :
                                        :
                    Respondent          :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  December 13, 2021

          Theresa Regan (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board), which affirmed the decision of a
workers' compensation judge (WCJ) denying the Claim Petitions filed by Vincent
Regan (Decedent) and Claimant's Fatal Claim Petition following remand by this
Court in *Regan v. Workers' Compensation Appeal Board (City of Philadelphia)* (Pa.
Cmwlth., No. 141 C.D. 2018, filed January 18, 2019), directing the WCJ and the
Board to apply the holding of *City of Philadelphia Fire Department v. Workers'
Compensation Appeal Board (Sladek)*, 195 A.3d 197 (Pa. 2018), in disposing of the
Claim and Fatal Claim Petitions.  We affirm.

On July 9, 2012, Decedent filed a Claim Petition pursuant to Section 108(r) of the Workers' Compensation Act (Act), alleging that he sustained a compensable injury in the nature of metastatic lung cancer as a result of exposure to International Agency for Research on Cancer (IARC) Group 1 carcinogens in smoke and diesel exhaust fumes while working for 34 years as a firefighter for the City of Philadelphia (Employer).[1]  Decedent asserted that August 13, 2008, was the date of his last exposure as it was the day that he stopped working for Employer.  Decedent also filed a Claim Petition under Section 108(r) alleging that he sustained a compensable injury in the nature of prostate cancer also as a result of his exposure to the Group 1 carcinogens in the course and scope of his employment as of January 1, 2007, and that he suffered a full disability wage loss from January 4, 2007, to January 25, 2007.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of July 7, 2011, P.L. 251, 77 P.S. §27.1(r) (Act 46).  Section 108(r) establishes, as an occupational disease, "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the IARC."  *Id.*  In turn, Section 301(f) of the Act provides, in pertinent part:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in [S]ection 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer.  The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. . . .  The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.

Added by the Act of July 7, 2011, P.L. 251, 77 P.S. §414.

Decedent died on September 29, 2012. On November 26, 2012, Claimant, Decedent's widow, filed a Fatal Claim Petition alleging that Decedent died from metastatic lung cancer. Employer filed Answers to the Claim and Fatal Claim Petitions denying all of the material allegations raised therein.

Following remand by this Court in *Regan*, on October 30, 2019, the WCJ issued a decision in which she made the following relevant findings of fact. Claimant testified that Decedent became a firefighter in 1974, following a three-year stint in the Army in Korea from 1969 to 1971, and that he worked continuously until he retired in 2008. She stated that she observed soot on his firefighting gear and smelled smoke on his gear. She said that Decedent started smoking when he returned from Korea and estimated that he smoked about half a pack a day until 2008. Claimant stated that Decedent's father was also a smoker and died from lung cancer as well as prostate cancer. She said that Decedent's sister had colon cancer and that Decedent had a number of aunts and uncles who had died of lung cancer as well. She testified that Decedent also had skin cancer and emphysema. WCJ 10/30/19 Decision at 4-5.

Claimant also submitted deposition testimony from two of Decedent's fellow firefighters, Joseph Hitchens and Gene Lancaster. Hitchens testified that he and Decedent fought 15 to 20 "good" fires together annually while working in the same platoon for Employer, and that he witnessed Decedent participate in various stages of firefighting. He stated that he saw Decedent wearing a self-contained breathing apparatus (SCBA), which was generally used during the initial stages of a fire, and that he saw Decedent cut open roofs during the ventilation process. He added that the fire trucks were fueled with diesel fuel, that a diesel exhaust system was installed in the firehouse in the 1990s, and that it was upgraded after 2000. He

3

testified that he witnessed Decedent smoking and that Decedent never received emergency care for smoke inhalation. WCJ 10/30/19 Decision at 5.

Lancaster testified that he worked fighting fires with Decedent for 30 years. He stated that Decedent fought fires from the exterior by ventilating roofs and performing overhaul and that smoke inhalation occurred while fighting exterior fires. He said that an SCBA can be used for approximately 15 to 20 minutes. He testified that the fire trucks were fueled with diesel fuel and that equipment checks were performed with the truck engines running, but that there was an exhaust fan in the fire station. He stated that Decedent was a moderate smoker and never received emergency medical care for smoke inhalation after a fire. WCJ 10/30/19 Decision at 5.

Claimant also presented the deposition testimony of Barry Singer, M.D., who is board certified in internal medicine, hematology, and medical oncology. He acknowledged that he is not a treating physician in this case, but that he reviewed Decedent's affidavit prior to his death, medical records from a family doctor, and medical records from Decedent's treating cancer doctors. He learned that Decedent was treated for prostate cancer that appeared to be localized, and that an adenocarcinoma lung cancer was diagnosed in 2009. He stated that Decedent was treated with surgery, but that the cancer recurred and Decedent died as a result of the cancer in 2012, with the death certificate stating metastatic lung cancer as the cause of death. WCJ 10/30/19 Decision at 5.

Dr. Singer reviewed general literature regarding firefighting and cancer, finding therein the fact that firefighters are exposed to Group 1, IARC-recognized carcinogens. He stated that he reviewed two studies, one from Guidotti and one from Hansen, which speak to the synergy in the development of lung cancer

4

between asbestos and smoking, but acknowledged that the Hansen study observed only nine firefighters in Denmark with no control for smoking and that the Guidotti study did not reach statistical significance. He testified that he was aware of the Baris study, which found no association between firefighting and the risk of lung cancer, and acknowledged that there are many studies that do not find an increase in lung cancer in firefighters. He opined that the IARC list of firefighter carcinogens cause lung cancer, but noted that smoking confounds the difficulty in establishing another cause of lung cancer because it is a known cause of that cancer by itself. He stated that when giving a specific opinion, synergy is something that is factored into his opinion. He testified that there is no question that Decedent was a heavy smoker, but given the number of fire runs that he made while firefighting, there was significant exposure to fire and its carcinogenic contents, and that the combination would be synergistic in his development of lung cancer. Ultimately, he opined that Decedent's service and exposure to carcinogens as a firefighter was a substantial contributing factor in his death from lung cancer. WCJ 10/30/19 Decision at 6-7.

However, the WCJ made the following findings regarding Dr. Singer's testimony:

> 10. Dr. Singer was deposed on methodology [] and his testimony shows that he was unable to cite any authority to support his belief that differential diagnosis is the appropriate methodology for an expert to use when attempting to determine whether a particular agent caused a particular cancer. Dr. Singer was not familiar with the IARC publications regarding the correct methodology to use when investigating a potential relationship between an agent and cancer, nor did he read the publication by the National Academy of Sciences on the topic. He was also unfamiliar with the Bradford Hill Criteria and, as a result, did not attempt to apply any of the the[] criteria for

5

determining causation in the Philadelphia Firefighter cases.

WCJ 10/30/19 Decision at 9.

The WCJ also cited the following observations regarding Dr. Singer's testimony supporting her determination that his testimony was not persuasive:

(a)     Dr. Singer was not Decedent's treating physician and was consulted for the purpose of litigation in this case.

(b)     Dr. Singer does not engage in research pertaining to firefighters, nor has he ever researched the etiology of cancer generally; Dr. Singer agreed that a necessary consideration in his evaluation of etiology of cancer, specifically carcinogenicity, is the dose response relationship between a given agent and a given disease. He had no specific information on exposure in any of the firefighter cases he reviewed. He relied solely on the firefighter's affidavit for the self-reported histories of exposure. He could not say, on an individual basis, whether a particular firefighter had any exposure to a given carcinogen. He did not have sufficient evidence that the firefighter was exposed to a carcinogen in a sufficient amount to be carcinogenic to the blood stream. While it is necessary to prove such elements to overcome a burden of proof, his failure to consider these issues affects his lack of persuasiveness by demonstrating a lack of foundation for his opinion.

(c)     Dr. Singer did not thoroughly consider other factors that are or might be relevant to the causation issue, such as Decedent's race, diet, smoking history, and military service.

(d)     Dr. Singer relied on studies that he did not completely read prior to forming his opinion or other sources that were not of statistical significance. Finally, Dr. Singer acknowledged that he is not familiar with the Bradford Hill Criteria, which Dr. Guidotti testified are fundamental to the most basic understanding of scientific literature.

6

WCJ 10/30/19 Decision at 9-10.

Employer presented the deposition testimony of Tee Guidotti, M.D., who is board certified in internal, pulmonary, and occupational medicine, and trained in the fields of epidemiology and toxicology. He stated that he has designed, performed, and analyzed hundreds of epidemiologic studies, including drafting three studies involving cancer risk in firefighters. He testified that on reviewing Dr. Singer's report, he was unable to state with any certainty that Dr. Singer used any method at all in arriving at his opinions because the report did not include any mention of what methodology was used. He pointed out several shortcomings in Dr. Singer's work, which spoke to the lack of methodology and lack of understanding of general scientific principles. Dr. Guidotti noted that Dr. Singer relied on papers that were not peer-reviewed and admitted that he was unclear regarding the importance of statistical significance. He stated that all of the proper methodologies include an evaluation of general causation before formulating an opinion regarding specific causation, that the Bradford Hill Criteria are essential in determining such general causation, and that Dr. Singer had never heard of these Criteria thereby illustrating his unfamiliarity with mainstream epidemiology. He testified that, despite what Dr. Singer may have said, he saw no evidence that Dr. Singer used any methodology before forming his opinions regarding the causal effect of firefighting in the development of cancer. WCJ 10/30/19 Decision at 8.

Employer also offered the deposition testimony of Andre Haas, M.D., Ph.D., a specialist in interventional pulmonary and thoracic oncology. He testified that his practice primarily focuses on treating patients by performing diagnostic procedures to establish a diagnosis, usually cancer, and he is primarily involved with the differentiation and diagnosis of lung cancers. He stated that medical records

7

revealed that Decedent began smoking at age 16, and quit at age 68 in 2008, with a 40- to 50-pack per year history of tobacco use. He said that the effect of a 40-pack per year history will increase the risk of lung cancer by 40 times. He opined that Decedent's tobacco exposure is the primary etiologic agent of his lung cancer and outweighed his occupational exposure to carcinogens. He noted Decedent's family history of cancer revealed a genetic component placing Decedent at an increased risk to lung carcinogens and that 85% of lung cancer is due to genetic alterations caused by exposure to inhaled carcinogens. He testified that there is no strong data suggesting that firefighting plays a causal role in the development of lung cancer and opined that firefighting is not a substantial contributing factor in the development of lung cancer. He stated that the Baris study of Philadelphia shows that firefighters do not have a statistically significant higher incidence of lung cancer, and that although arsenic is a lung carcinogen, a firefighter's level of exposure to arsenic does not cause lung cancer because firefighters are not developing lung cancer at a higher rate than people who are not exposed to arsenic. WCJ 10/30/19 Decision at 9.

The WCJ made the following credibility determinations:

12. This [WCJ] finds the testimony of Drs. Guidotti and Haas to be credible and persuasive regarding the generally accepted methodologies an expert might utilize and the epidemiology. Further, this [WCJ] finds that no expert testimony was presented from Claimant regarding the appropriateness of Dr. Singer's methodology. As such, Dr. Guidotti's testimony that Dr. Singer did not employ a generally accepted methodology is unrebutted. Therefore, Dr. Singer's testimony and opinions are incompetent as a matter of law and are rejected in whole. Drs. Guidotti's and Haas' credentials include research and examination of the association between cancer and the job of firefighting, including epidemiologic studies regarding same. Their testimony is found to be more credible and persuasive than that of Dr. Singer, who has no experience in research, has

8

never performed an epidemiologic study, and has never examined a firefighter. Dr. Singer was unable to answer basic questions regarding epidemiology and did not provide an opinion with regard to general causation. Drs. Guidotti's and Haas' unrebutted testimony that general causation must be proven prior to rendering a specific causation opinion is hereby acknowledged as fact. Additionally, Dr. Guidotti's testimony that there is no causal link between lung cancer and the job of firefighting is accepted as fact. As such, [] Employer has rebutted the presumption with substantial competent evidence that the cancer was not caused by firefighting. Dr. Haas' testimony is persuasive that Decedent's tobacco use is the primary etiologic agency of Decedent's lung cancer – far outweighing his occupational exposure for the risk of causative carcinogen[s].

WCJ 10/30/19 Decision at 10. As a result, the WCJ found as fact that Employer "presented substantial, competent, and convincing evidence that lung cancer is not related to firefighting in this case," and that based on the credibility determinations made, "Decedent's cancer, if related to any identifiable risk factor, is related to his multiple risk factors for the development of lung cancer, including heavy smoking for over [30] years, and his family history of lung cancer." *Id.* at 10-11.

Based on the foregoing, the WCJ reached the following conclusions:

2. The provisions of Act 46 [] require evidence of direct exposure to a Group 1 carcinogen, as defined by the [IARC], which caused the cancer at issue. The burden placed on a claimant was established by the Supreme Court in [*Sladek*, 195 A.3d at 208,] that Section 108(r) "clearly imposes an initial burden of causation on the claimant . . . [and] the claimant must produce evidence that it is **possible** that the carcinogen in question caused the type of cancer with which the claimant in afflicted." [(Emphasis in original and footnote omitted.)] This [WCJ] has applied the burden established by the Court to this case. Claimant has failed to establish that Decedent had such exposure to any such carcinogen which could account for his lifetime claim and death claim.

9

3.     Claimant has failed to overcome her prima facie burden under Section 301(c)(1), 301(c)(2),[2] 108(o),[3] or

_____

[2] Section 301(c)(1) and (2) states, in pertinent part:

(1) The terms "injury" and "personal injury," as used in this [A]ct, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection [301](f), arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this [A]ct, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. The term "injury arising in the course of his employment," as used in this article, . . . shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . .

(2) The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this [A]ct, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this [A]ct:  Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease:  And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. . . . The employer liable for compensation provided by . . . [S]ection 108, subsections . . . (o), . . . or (r), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed.

77 P.S. §411(c)(1), (2).

[3] Section 108(o) establishes, as an occupational disease:

**(Footnote continued on next page…)**

10

108(r), since she has not submitted any competent medical evidence regarding causation. For those reasons, Claimant has failed to prove entitlement to workers' compensation benefits for any period or in any amount for the alleged work injury.

4. []Employer presented substantial competent and compelling evidence that Decedent's lung cancer was not related to his occupation of firefighting, and hence, even if the presumption of Act 46 w[as] deemed to have been triggered, it was fully rebutted by the [Employer's] evidence.

WCJ 10/30/19 Decision at 11. Accordingly, the WCJ issued an order denying and dismissing Decedent's Claim Petitions and Claimant's Fatal Claim Petition. *Id.* at 12. Claimant appealed to the Board, which affirmed the WCJ's decision, and Claimant filed the instant petition for review of the Board's order.[4]

On appeal, Claimant argues that the Board erred in affirming the WCJ's decision because: (1) the WCJ's decision denying her Fatal Claim Petition is not supported by competent evidence and is inconsistent with controlling legal authority; and (2) the WCJ's decision is not a "reasoned decision" under Section 422(a)[5] of

---

Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in firefighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

77 P.S. §27.1(o).

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Morocho v. Workers' Compensation Appeal Board (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017).

[5] Section 422(a) of the Act states that
**(Footnote continued on next page…)**

11

the Act. Specifically, Claimant argues that all of the uncontradicted evidence presented confirms that the lung cancer is related to IARC Group 1 carcinogens encountered by Decedent as a firefighter and that when Sections 108(o), 108(r), and 301(f) are applied, the record confirms that she was entitled to the rebuttable presumption of causation. Additionally, Dr. Haas's opinion evidence is equivocal, and his reliance on Decedent's smoking as the sole cause of the lung cancer is not supported by the record, and it is incompetent to rebut the presumption under the Act. Finally, the WCJ's reversal of her credibility findings on remand,[6] as well as

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

[6] To the extent that Claimant also asserts that the WCJ erred in making her credibility determinations regarding the medical evidence on remand, this Court has stated:

> [The c]laimant also argues that the WCJ exceeded the scope of the remand order. We disagree. A WCJ must restrict her decision on remand to the instructions within the remand order. *Teter v. Workers' Compensation Appeal Board (Pinnacle Health System)*, 886 A.2d 721 (Pa. Cmwlth. 2005); *Clark v. Workers' Compensation Appeal Board (Wonder Bread Co.)*, 703 A.2d 740 (Pa. Cmwlth.

**(Footnote continued on next page…)**

12

1997).  Importantly, however, the WCJ "is not required to produce the same result as the initial decision . . . ." *Teter*, 886 A.2d at 723.

In *Teter*, the WCJ initially found the claimant's experts credible and the employer's expert not credible and granted the claimant's claim petition.  The employer appealed, and the Board remanded to the WCJ with instructions to summarize the testimony of the employer's medical witness and explain the basis for his credibility determinations regarding the expert medical testimony.  On remand, the WCJ found the employer's expert credible, and he relied on that testimony to terminate benefits as of a certain date.  The claimant then appealed, asserting that the WCJ could not change his credibility determination on remand, as doing so it was beyond the scope of the remand order.  The Board rejected that assertion, and this Court affirmed the Board.

We explained that the WCJ was required on remand to review the medical testimony and state the basis for his determinations, but a WCJ is not required to produce the same outcome on remand, as long as he stays within the boundaries of the remand order.  *Id.*  On remand, the WCJ in *Teter* reviewed and summarized the medical experts' testimony; made new credibility determinations; and provided an explanation for those credibility determinations.  We held that the WCJ did not err in reaching a different outcome because the remand order did not require the WCJ to produce the same result as the initial decision.  *Id.*

*Teter* is dispositive here. . . .

*Green v. Workers' Compensation Appeal Board (US Airways)*, 155 A.3d 140, 148-49 (Pa. Cmwlth. 2017).

In this case, our memorandum opinion remanding the matter to the Board for further remand to the WCJ stated, in relevant part:

In this appeal, Claimant argues that the WCJ's conclusion that she did not meet her initial burden and failed to establish entitlement to the presumption is not supported by substantial competent evidence.  Additionally, Claimant argues that Employer failed to rebut the presumption to which she was entitled.

**(Footnote continued on next page…)**

13

her failure to provide necessary findings on all of the evidence presented, demonstrates that her decision is not a reasoned decision as required by Section 422(a) of the Act.

## I.

Claimant first argues that the WCJ erred in failing to apply the rebuttable presumption provided by the Act that Decedent's lung cancer was caused by his work as a firefighter, and in determining that Employer's evidence rebutted that presumption. As this Court has recently explained, in general

> [t]o prevail on a claim petition, a claimant bears "the burden of establishing the right to compensation and all of the elements necessary to support an award." *Rife v. Workers' Comp*[*ensation*] *Appeal B*[*oard*] (*Whitetail Ski Co.*), 812 A.2d 750, 754 (Pa. Cmwlth. 2002). Section 301(a) of the Act, 77 P.S. §431, provides that "[e]very employer shall be liable for compensation for personal injury to . . . each employe, by an injury in the course of his employment . . . ." Section 301(c)(2) of the Act, 77

In assessing the record evidence in this case, the Board and the WCJ relied on our analysis in [*City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 144 A.3d 1011 (Pa. Cmwlth. 2016), *rev'd*, *Sladek*, 195 A.3d 197], which is no longer controlling. Consequently, we are compelled to vacate and remand the Board's decision. Because the record includes evidence presented by both parties that is relevant under the Supreme Court's analysis in [*Sladek*], the Board is to remand the matter to the WCJ ***for new findings and conclusions consistent with that opinion.***

*Regan*, slip op. at 14-15 (emphasis added and footnote omitted). As extensively outlined above, the WCJ made new findings and conclusions based upon an extensive and exhaustive review of the evidence presented by both parties in this matter. Thus, the WCJ's findings in the present matter are clearly within the boundaries of our remand order so that any claimed error in this regard is without merit regardless of whether the WCJ reached the same conclusions based on those new findings. *Green*.

14

P.S. §411(2), defines the phrase "injury arising in the course of his employment" to include an "occupational disease," as that term is defined under Section 108 of the Act. Thus, an injury satisfying the definition of "occupational disease" under Section 108 is a compensable injury under the Act. To assist claimants who assert they suffer from an occupational disease in demonstrating the elements necessary to support an award, the Act contains a generally applicable evidentiary presumption regarding the cause of a claimant's occupational disease. Section 301(e) of the Act, [added by the Act of October 17, 1972, P.L. 930,] 77 P.S. §413, provides[]:

> [that i]f it be shown that the employe, at or immediately before the date of disability, was employed in any occupation . . . in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

The definition of "occupational disease" was amended by [Act 46] to add Section 108(r), which expanded the term "occupational disease" to include "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the [IARC]." 77 P.S. §27.1(r). Act 46 also added Section 301(f) of the Act, 77 P.S. §414, which imposes additional conditions on the presumption of Section 301(e) as it relates to the occupational disease of cancer suffered by a firefighter. Under Section 301(f), a firefighter is entitled to benefits for the occupational disease of cancer, as defined in Section 108(r) of the Act, provided the firefighter can show: (1) employment for four or more years in continuous firefighting duties; (2) direct exposure to an IARC Group 1 carcinogen; and (3) the firefighter passed a physical examination prior to engaging in firefighting duties that did not reveal any evidence of cancer. 77 P.S. §414. Once the claimant shows these elements and the presumption of causation applies, the employer can rebut the presumption through "substantial

15

competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." *Id.*

Importantly, when evaluating whether a claimant has met his burden under the Act, "[t]he WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife*, 812 A.2d at 755. It is well[]settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Comp*[*ensation*] *Appeal B*[*oard*] *(Senco Prod*[*ucts*]*, Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). Where the WCJ is required to assess the credibility of deposition testimony, the WCJ must articulate objective bases for crediting one witness's deposition testimony over another witness's deposition testimony. *Daniels v. Workers' Comp*[*ensation*] *Appeal B*[*oard*] *(Tristate Transp*[*ort*])*, 828 A.2d 1043, 1053-54 (Pa. 2003).

*Malone v. Workers' Compensation Appeal Board (City of Philadelphia)* (Pa. Cmwlth., No. 22 C.D. 2020, filed January 6, 2021), slip op. at 15-16 (footnotes omitted).[7]

Regarding the statutory presumption under Section 108(r), this Court further observed:

In [*Sladek*], the [Supreme] Court explained that the Act divides litigation by firefighters for cancer claims into "discrete stages." [195 A.3d] at 207. First, the claimant must carry an initial burden under Section 108(r). This initial burden, which concerns general causation only, is not a heavy one, and the claimant need only "establish a general causative link between the claimant's type of cancer and a Group 1 carcinogen." *Id.* at 208. "In other words, the claimant must produce evidence that it is possible that the carcinogen in question caused the type of cancer with which the claimant is afflicted." *Id.* Next, the

---

[7] *See* Pa. R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

16

claimant must show that the claimant meets the other three conditions to the presumption in Section 301(f) of the Act, *i.e.*, four or more years of service, direct exposure to an IARC Group 1 carcinogen, and a cancer-free physical exam prior to engaging in firefighting work. *Id.* at 207. If the claimant makes these showings, the claimant benefits from the presumption in Section 301(f), and the burden shifts to the employer to prove that the claimant's cancer was caused by something other than the claimant's work as a firefighter. *Id.* The Court noted that "epidemiological evidence is clearly relevant and useful in" evaluating general causation at the initial burden stage. *Id.* at 208. The Court therefore directed the Board on remand to determine whether Dr. Singer's testimony satisfied the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and stated that if it did not, the claimant could not carry his initial burden as to general causation under Section 108(r) of the Act. [*Sladek*], 195 A.3d at 210. Crucially, for the instant case, the Court also noted that, even if Dr. Singer's testimony satisfied the *Frye* standard, the fact finder was free to find "that Dr. Guidotti's opinion is more credible on the question of general causation." *Id.* In that situation, "the epidemiological evidence offered by [Employer] through Dr. Guidotti would carry the day without the burden of proof . . . ever shifting to [Employer] to prove specific causation." *Id.*

*Malone*, slip op. at 18-19 (footnotes omitted).

As in this case, in *Malone*, the claimant "insist[ed] that he carried his initial burden with respect to general causation, thus demonstrating that he suffers from an occupational disease," and he presented "Dr. Singer's uncontradicted testimony as to general causation, including Dr. Singer's direct opinion that certain IARC Group 1 carcinogens can cause [his] cancer." Slip op. at 20. Likewise, as in this case, "[w]e disagree with [c]laimant's characterization of his evidence as uncontradicted" because "Dr. Guidotti directly testified that Dr. Singer's method for reviewing the various epidemiologic studies Dr. Singer cited was not a sufficient

17

method for determining general causation, thereby challenging Dr. Singer's general causation opinion." *Id.* at 21.

As outlined above, in this case, the WCJ specifically found that "Dr. Guidotti's testimony that Dr. Singer did not employ a generally accepted methodology is unrebutted"; that "[t]herefore, Dr. Singer's testimony and opinions are incompetent as a matter of law and are rejected in whole"; that Dr. Guidotti's "unrebutted testimony that general causation must be proven prior to rendering a specific causation opinion is hereby acknowledged as fact"; and that "Dr. Guidotti's testimony that there is no causal link between lung cancer and the job of firefighting is accepted as fact." WCJ 10/30/19 Decision at 10. Because the WCJ accepted Dr. Guidotti's testimony regarding general causation over that of Dr. Singer, Claimant did not carry his initial burden as to general causation under Section 108(r) of the Act to invoke the presumption in Section 301(f), and the burden of proof never shifted to Employer to prove specific causation as to Decedent's fatal lung cancer. Accordingly, contrary to Claimant's assertions, the Board did not err in affirming the WCJ's decision denying the Claim and Fatal Claim petitions.[8]

---

[8] Likewise, as we determined in *Malone*:

> Here, unlike in [*Sladek*] and *Deloatch* [*v. Workers' Compensation Appeal Board (City of Philadelphia)*, 224 A.3d 432 (Pa. Cmwlth. 2020)], none of the testimony credited by the WCJ, *i.e.*, the testimony of [the c]laimant, Dr. Weaver, Dr. Guidotti, or Dr. Stanford, established that any IARC Group 1 carcinogen can cause prostate cancer. As we have discussed, the WCJ's decision not to credit Dr. Singer's testimony was an exercise of discretion accompanied by a reasoned explanation, and it must, therefore, stand. We conclude that [the c]laimant has not met his initial burden of demonstrating general causation under Section 108(r) of the Act, and he has not established that his cancer is an occupational disease under that section. Because [the c]laimant did not meet this initial

**(Footnote continued on next page…)**

## II.

Finally, regarding the reasoned decision requirements of the Act, we have previously explained:

> The requirement that the WCJ adequately explain his reasons for accepting or rejecting evidence protects the parties to a decision by ensuring that a legally erroneous basis for a finding will not lie undiscovered. For instance, if a WCJ rejects evidence based on an erroneous conclusion that testimony is equivocal, or that the evidence is hearsay or for some other reason incompetent, such legal error will be evident and can be corrected on appeal.
>
> However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously.

*PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1088-89 (Pa. Cmwlth. 1998). Here, the WCJ's findings reflect that she reviewed the evidence of record and that her determination was based in part on the inferiority of Dr. Singer's credentials and methodology, and the superiority of the same with respect to Dr. Guidotti and Dr. Haas. WCJ's 10/30/19 Decision at 9-

---

burden, his demonstration of the other factors under Section 301(f) of the Act does not entitle him to the presumption found in that section, and the Board did not err in declining to apply that presumption. *See* [*Sladek*], 195 A.3d at 207; *Deloatch*, 224 A.3d at 440. Accordingly, the burden never shifted to [the e]mployer to rebut the presumption that [the c]laimant's cancer was caused by his work. [*Sladek*], 195 A.3d at 210.

Slip op. at 22 (footnote omitted). Thus, even if it is assumed that Claimant is correct that Dr. Haas's testimony is not competent regarding the specific causation of Decedent's fatal lung cancer, it was unnecessary for Employer to prove specific causation because, as outlined above, Claimant failed to demonstrate general causation in the first instance to invoke the statutory presumption.

19

11. Thus, the WCJ's decision reflects that her determination was not made arbitrarily or capriciously.

Moreover, in addressing a reasoned decision challenge to the WCJ's findings, our scope of review remains limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the WCJ's findings are supported by substantial evidence. 717 A.2d at 1089. In this instance, the WCJ's comments concerning the competing medical evidence presented by the parties are supported by the record and reflect no legal error.

Because the WCJ's credibility determinations were not made arbitrarily and capriciously and her findings are supported by substantial evidence, the WCJ's decision cannot be disturbed on appeal. *Id.* Further, we conclude that the WCJ's decision sets forth an adequate explanation of her reasons for accepting and rejecting evidence, and therefore satisfies the reasoned decision requirements of Section 422(a) of the Act. *See id.* at 1089 (noting that Section 422(a) does not require "adequate reasons," but an adequate explanation for those reasons, in order for appellate review to be meaningful).

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vincent Regan,                          :
                                        :
                    Petitioner          :
                                        :
        v.                              : No. 1277 C.D. 2020
                                        :
City of Philadelphia (Workers'          :
Compensation Appeal Board),             :
                                        :
                    Respondent          :

# **O R D E R**

AND NOW, this 13th day of December, 2021, the order of the Workers' Compensation Appeal Board dated December 9, 2020, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge