IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Carlson,                 :
           Petitioner      :
                              :
         v.                 :     No. 793 C.D. 2021
                              :     Submitted: February 11, 2022
General Electric Company (Workers' :
Compensation Appeal Board),      :
           Respondent     :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                           FILED: June 28, 2022

Dennis Carlson (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying his claim petition for binaural hearing loss due to exposure to hazardous occupational noise while working for the General Electric Company (Employer). Claimant contends that the WCJ's reasons for crediting Employer's medical expert are not supported by substantial evidence and, further, because Employer did not present a reasonable contest to the claim petition, Claimant is entitled to costs and attorney's fees. Discerning no merit to Claimant's contentions, we affirm the Board.

On June 7, 2019, Claimant filed a claim petition pursuant to the Workers' Compensation Act (Act),[1] alleging that he suffered a compensable hearing

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

loss because of exposure to hazardous occupational noise that caused a binaural hearing loss of more than 10%. Reproduced Record (R.R. __) at 4a. Employer denied that Claimant's hearing loss was work related, alleging that Claimant had not been exposed to noise levels in excess of 90 decibels, at least 3 days a week, for 40 weeks in a 12-month period. Certified Record (C.R.), Item No. 4.

At a hearing before the WCJ, Claimant testified that he began his work for Employer in November of 1977 and retired in 2019, at age 60. Notes of Testimony, 7/24/2019, at 8, 19 (N.T. __); R.R. 15a, 26a. From 1977 until 1994, Claimant did heavy fabrication in Building 5, constructing platforms for locomotives. This work exposed Claimant to noise produced by air arch welders, grinders, impact tools, sirens, cranes, and the slamming of heavy metal. Building 5 was the noisiest environment in which Claimant worked. Claimant then worked in Building 10 doing final assembly from 1994 through 2010. Although quieter, this position exposed Claimant to noise from impact guns, air arch welding, cranes and sirens. From 2010 to 2015, Claimant worked in Building 12, constructing the main cabs for the conductor and engineer. The noise in Building 12 was similar to the noise in Building 10, but quieter. Finally, before his retirement, Claimant worked as an inspector in Building 10, where he assisted the assemblers. There, Claimant was exposed to intermittent noise from pressurized air and impact guns, and sirens.

Claimant testified that, when required by Employer, he wore hearing protection while working in Building 5. Hearing protection was not mandatory in Buildings 10 or 12, but Claimant occasionally wore hearing protection in those buildings. Beginning in 1977, Employer performed annual audiograms on Claimant and in 1995 informed him of a threshold shift for the first time.

2

Also in support of his claim petition, Claimant offered the medical report of Dr. Robert Dugan, who has been treating Claimant since 2003. Dr. Dugan's report for July 1, 2019, indicated that Claimant reported that in his 40 years with Employer he had been exposed to hazardous occupational noise. The report also stated that while Dr. Dugan never treated Claimant for ear trauma, he was not aware of any exposure to hazardous noise outside of Claimant's work with Employer. After reviewing Claimant's audiometry tests performed by Employer over the years, Dr. Dugan opined "within a reasonable degree of medical certainty" that Claimant's "hearing loss was caused, or exacerbated by, exposure to hazardous occupational noise." R.R. 62a.

Claimant also offered the medical report of Dr. Sean Carroll, who is board certified in otolaryngology, of ENT (ear, nose, and throat) Specialists of Northwestern Pennsylvania. Dr. Carroll examined Claimant on May 22, 2019, and opined that Claimant suffers from binaural symmetric hearing loss. Based on Dr. Carroll's audiogram, Claimant has monaural loss for the left side of 18.75% and a monaural loss of 16.87% for the right side, which results in a binaural hearing loss percentage score of 17.18%.[2] Dr. Carroll reviewed Claimant's audiograms dating

---

[2] Dr. Carroll explained that for permanent loss of hearing due to long-term exposure to hazardous occupational noise, the percentage of impairment is calculated using the binaural formula provided in the American Medical Association's Guides to the Evaluation of Permanent Impairment (4th Edition) (Impairment Guides). R.R. 60a. The Impairment Guides are required by Section 306(c)(8)(i) of the Act, added by the Act of February 22, 1995, P.L. 1, No. 1 (Act 1), 77 P.S. §513(8)(i). Section 306(c)(8)(i) provides:

> For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the Impairment Guides.

77 P.S. §513(8)(i). Section 105.5 of the Act, also added by Act 1, provides that "[t]he term 'Impairment Guides,' as used in this act, means the American Medical Association's Guides to the Evaluation of Permanent Impairment, Fourth Edition (June 1993)." 77 P.S. §25.5.

back to 1991 and believed that the 40 years of noise exposure at Employer has contributed significantly to Claimant's hearing loss. Given Claimant's history of occupational noise exposure over a long period of time, Dr. Carroll suspected Claimant's hearing loss was caused by this exposure.

In response, Employer presented the deposition testimony of Douglas Chen, M.D., who is board certified in otolaryngology and performed an independent medical evaluation (IME) of Claimant on September 26, 2019, which included taking Claimant's history. In addition, Dr. Chen reviewed Claimant's July 24, 2019, testimony; records from Employer; a noise dosimetry test from Building 10 from 2004 or 2005; the medical report of Dr. Carroll from July 15, 2019; and multiple audiograms for Claimant dating back to 1977. Dr. Chen's audiogram of Claimant revealed that Claimant's hearing impairment was calculated at 16.875% in the left ear and 18.75% in the right ear, for a binaural impairment of 17.185%, which was close to Dr. Carroll's audiogram results. Dr. Chen opined within a reasonable degree of medical certainty that Claimant has bilateral sensorineural hearing loss, the most common form of hearing loss. Dr. Chen explained that "[h]ereditary causes are actually one of the most frequent causes of hearing loss, and it turns out age-related hearing losses are hereditarily or genetically driven." R.R. 116a. Thus, some people are more prone than others to age-related hearing loss due to their genetic predisposition. Moreover, the acceleration of Claimant's hearing loss in the last three to five years of employment, when he was exposed to less occupational noise, was not consistent with causation by occupational noise exposure.

Dr. Chen opined, within a reasonable degree of medical certainty, that Claimant "has multiple causes for his hearing loss, but the substantial portion of his hearing loss and hearing impairment is not related to occupational noise while

4

working [for Employer]." R.R. 117a. Dr. Chen based his opinion on an American College of Occupational Medicine paper[3] on noise-induced hearing loss, which explained that one of the defining features of such loss "is that the substantial portion of an occupational noise hearing loss occurs during the first 10 to 15 years of exposure and thereafter slows." *Id.* This happens because "the ear basically is more sensitive to noise early on, and as the damage occurs, it becomes less sensitive to noise." *Id.* After the initial 10- to 15-year period, if the rate of hearing loss does not slow down, or if it accelerates, "then other factors need to be considered, and age is frequently a very common problem, which can be superimposed on other hearing losses, such as noise." R.R. 118a. In Claimant's case, his hearing loss started to accelerate after 20 or 30 years of noise exposure, which is consistent with Claimant's subjective impression that his hearing loss became more significant in the last 3 to 5 years. *Id.* Dr. Chen opined within a reasonable degree of medical certainty that Claimant has hearing loss and impairment of less than 10% due to occupational noise exposure while working for Employer. *Id.*

By decision dated July 27, 2020, the WCJ found that Claimant did not suffer occupationally induced hearing loss. WCJ Decision, 7/27/2020, Finding of Fact (F.F.) No. 13. In so finding, the WCJ credited Dr. Chen's testimony that Claimant's hearing loss was not occupationally induced because it developed in the latter part of his 40-year career with Employer. *Id.* Dr. Chen explained that most occupationally induced hearing loss occurs within the first 10 to 15 years of exposure. Claimant was exposed to the most noise in the first 27 years of his employment, but he did not develop hearing loss until later in his career.

---

[3] Dr. Chen stated that the paper is "very widely accepted." R.R. 117a.

Accordingly, Claimant's hearing loss was not causally related to noise exposure at work.

The WCJ also found Dr. Chen's opinions more credible than the opinions of Dr. Dugan and Dr. Carroll, explaining:

> Dr. Carroll opined that [] Claimant's work audiograms show that after 1991[,] [] Claimant had a progression of hearing loss to the point where he is at today. Dr. Carroll disagreed that age was a significant factor in Claimant's hearing loss. Dr. Carroll opined that [] Claimant's 40 years of exposure to noise at [Employer] significantly contributed to his hearing loss. Dr. [Dugan] also opined [that] Claimant's hearing loss was related to his 40 years of exposure to noise at [Employer]. Dr. Carroll and Dr. [Dugan] did not address the fact that [] Claimant's hearing loss did not progress until the latter part of his 40-year career at [Employer]. Dr. Carroll did not reasonably explain why [] Claimant's hearing loss did not occur in his first 20 years of employment and exposure to noise but rather happened at the latter part of his 40-year career. In comparing the opinions of Dr. Chen with those of Dr. Carroll and Dr. [Dugan], this [WCJ] finds Dr. Chen's opinion to be more credible.

WCJ Decision, 7/27/2020, F.F. No. 13. Based on the above findings, the WCJ concluded that Claimant did not meet his burden of proving that his binaural hearing loss was caused by hazardous occupational noise. Specifically, Claimant did not prove that his hearing loss was causally related to exposure to hazardous occupational noise in the workplace or that more than 10% of his hearing loss was attributable to exposure to such noise. WCJ Decision, 7/27/2020, Conclusions of Law (C.L.) No. 1, 2. The WCJ denied Claimant's claim petition.

Claimant appealed, and the Board affirmed the WCJ's determination that Claimant had not established that his hearing loss was causally related to noise exposure at work. Specifically, the Board rejected Claimant's argument "that Dr.

6

Chen attributed an unstated percentage of Claimant's hearing loss to presbycusis and improperly deducted that unstated percentage from the known binaural hearing loss" of 17% to reach the conclusion that Claimant's work-related binaural hearing impairment was not in excess of 10%, the statutory minimum. Board Adjudication, 7/7/2021, at 7-8. The Board also determined that the WCJ did not err by declining to award litigation costs and counsel fees because Claimant did not prevail. Board Adjudication, 7/7/2021, at 7 n.3. Claimant then petitioned for this Court's review.

On appeal,[4] Claimant raises three issues. First, Claimant contends that the WCJ erred in determining that Dr. Chen's testimony established that a significant portion of Claimant's hearing loss was not work related and due to age-related factors. Second, Claimant argues that Employer failed to assert an affirmative defense to the claim petition because its expert agreed that multiple factors contributed to Claimant's binaural hearing loss. Third, Claimant asserts that Employer had no reasonable basis to deny his claim, which entitles Claimant to reimbursement of attorney fees.

In his first issue, Claimant contends that Dr. Chen's opinion regarding hearing loss is contrary to our Supreme Court's ruling in *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 754 A.2d 666 (Pa. 2000), that the General Assembly did not intend to allow an age-related deduction from the total percentage of hearing impairment. Claimant argues that by crediting Dr. Chen's opinion, the WCJ has effectively allowed an age-related deduction from Claimant's binaural hearing loss.

---

[4] This Court's review determines whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 589 A.2d 291, 293 (Pa. Cmwlth. 1991).

Employer responds that there is no presumption that Claimant's binaural hearing loss in excess of 10% was due to his exposure to occupational noise. Rather, Claimant had the burden to establish a causal relationship between his hearing loss and his occupational noise exposure. Here, the WCJ accepted Employer's medical evidence, and rejected Claimant's medical evidence, and the WCJ is the arbiter of fact and witness credibility. Simply, Claimant did not prove binaural hearing loss in excess of 10% as a result of his exposure to occupational noise in the workplace.

We begin with a review of the law. Section 306(c)(8)(i) of the Act provides:

> For permanent loss of hearing which is medically established as an occupational hearing loss caused by long-term exposure to hazardous occupational noise, the percentage of impairment shall be calculated by using the binaural formula provided in the [American Medical Association's Guides to the Evaluation of Permanent Impairment (]Impairment Guides[)].

77 P.S. §513(8)(i). To meet his burden, a claimant must prove that his hearing loss was caused by his employment. *Rockwell International v. Workers' Compensation Appeal Board (Sutton)*, 736 A.2d 742, 744-45 (Pa. Cmwlth. 1999). If a causal relationship is not obvious, unequivocal medical evidence must be offered. *Jeannette District Memorial Hospital v. Workmen's Compensation Appeal Board (Mesich)*, 668 A.2d 249, 251 (Pa. Cmwlth. 1995).

In reviewing a substantial evidence[5] challenge, we "consider the evidence as a whole, view the evidence in a light most favorable to the party [that]

---

[5] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Manufacturing Company v. Workers' Compensation Appeal Board (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (*en banc*) (internal quotation marks omitted). Where both parties present evidence, it does not matter if there is evidence that supports a contrary finding; the pertinent question is whether there is evidence that supports the findings that were made. *McCabe v. Workers' Compensation Appeal Board (Department of Revenue)*, 806 A.2d 512, 515 (Pa. Cmwlth. 2002). "The WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Compensation Appeal Board (Whitetail Ski Company)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). It is well settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). In the rare instances where we review a credibility determination, "[w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

Here, Claimant offered evidence of his work-related hearing loss in the form of his own testimony and reports from Dr. Carroll and Dr. Dugan. Both of Claimant's doctors offered opinions that Claimant's hearing loss was caused by exposure to hazardous occupational noise during Claimant's tenure with Employer. While the WCJ did not entirely reject Claimant's doctors' reports and opinions, she simply did not find them as credible as Dr. Chen on the question of causation for

9

Claimant's hearing loss. Employer's expert, Dr. Chen, explained that Claimant's hearing loss was not occupationally induced because his hearing loss developed in the latter part of his career with Employer, which is atypical for a hearing loss caused by exposure to hazardous occupational noise. Neither Dr. Carroll nor Dr. Dugan addressed the fact that Claimant's hearing loss did not progress until the latter part of his career, and, as such, the WCJ credited Dr. Chen's explanation over the other doctors' opinions.

Contrary to Claimant's argument that the WCJ essentially made an age-related hearing loss deduction from Claimant's total binaural hearing loss in contravention of *LTV Steel Company*, the WCJ focused on Dr. Chen's testimony on the progression of Claimant's hearing loss in her findings of fact. Dr. Chen explained that exposure to hazardous occupational noise causes a hearing loss within the first 10 to 15 years of that exposure, but Claimant's hearing loss did not appear until 27 years after Claimant was exposed to the most hazardous occupational noise while working in Building 5. Further, Claimant's hearing loss accelerated in the last 3 to 5 years of employment when his occupational noise exposure was reduced. The WCJ concluded that Claimant's hearing loss was not caused by noise exposure at work but did not find an age-related hearing loss.

While Claimant did establish that he had binaural hearing loss, the WCJ rejected Claimant's causation theory, thereby precluding Claimant from meeting his burden. The WCJ has exclusive power over questions of credibility and weight to assign the evidence. In short, the substantial evidence in the record supports the WCJ's findings of fact. Viewing the evidence in a light most favorable to the

prevailing party and drawing all reasonable inferences which are deducible from the evidence in that party's favor, this Court declines to disturb the WCJ's findings.[6]

Accordingly, for all the above reasons, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[6] Because Claimant did not meet his burden of proving causation, we need not address his second issue, *i.e.*, that Employer failed to present sufficient evidence of an affirmative defense to the claim petition pursuant to Section 306(c)(8)(x) of the Act, 77 P.S. §513(8)(x) ("Whether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim."). Moreover, because Claimant is not the prevailing party, no counsel fees for unreasonable contest or litigation costs can be awarded pursuant to Section 440(a) of the Act, added by Act of February 8, 1972, P.L. 25, 77 P.S. §996(a). Thus, his third issue is moot.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Carlson, :
        Petitioner :
         :
     v. : No. 793 C.D. 2021
         :
General Electric Company (Workers' :
Compensation Appeal Board), :
        Respondent :

# **O R D E R**

AND NOW, this 28th day of June, 2022, the adjudication of the Workers' Compensation Appeal Board, dated July 7, 2021, is hereby AFFIRMED.

_____

MARY HANNAH LEAVITT, President Judge Emerita